| | |
|---|---|
| ESTER BURNETT,<br>CDCR #V-35245,<br><br>                              Plaintiff,<br><br>vs.<br><br>DUGAN; KINJI L. HAWTHORNE;<br>BROWN; FRAZE; D. KHATRI;<br>VICTOR ALMAGER; BARRERAS,<br><br>                              Defendants. | Civil No.   08-1324 L (LSP)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO FED.R.CIV.P. 65**<br><br>**[Doc No. 25]** |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

**I.     PROCEDURAL HISTORY**

Currently before the Court is Plaintiff's Motion for Emergency Restraining Order and Preliminary Injunctive Relief pursuant to FED.R.CIV.P. 65 [Doc No. 25].

Ester Burnett ("Plaintiff"), is a prisoner proceeding *in pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Among the allegations in his Complaint, Plaintiff claims that prison officials at California State Prison, Centinela ("CEN") have violated his Eighth Amendment rights by failing to provide him with adequate medical care and failing to accommodate his disability. The Court sua sponte screened Plaintiff's Complaint and initially dismissed it for failing to state a claim upon which § 1983 relief could be granted. (*See* Sept. 29, 2008 Order at 6-7.) Plaintiff filed his First Amended Complaint ("FAC") on November 24, 2008 [Doc. No. 11]. The Court once again screened Plaintiff's FAC and found that the

allegations in Plaintiff's FAC survived the sua sponte screening process required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). (*See* Dec. 10, 2008 Order at 2.) The Court further found that Plaintiff was entitled to U.S. Marshal service on his behalf. (*Id.*)

On March 19, 2009, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction [Doc. No. 25]. The Court deemed Plaintiff's motion as a motion for preliminary injunction and issued a briefing schedule. Defendants were directed to file a response to Plaintiff's Motion. (*See* Mar. 23, 2009 Order at 1.) Defendants' filed their response to Plaintiff's Motion on April 13, 2009 [Doc. No. 29]. The Court permitted Plaintiff to file a response to Defendants' Opposition [Doc. Nos. 31, 33].

## II.  FACTUAL ALLEGATIONS

In his Motion for Preliminary Injunction, Plaintiff alleges that he had back surgery performed by Dr. Calvin on June 27, 2008. (Pl.'s Mot. at 3.) As a result of his surgery and ongoing medical issues related to his back, Dr. Calvin ordered that Plaintiff be housed in a "single cell with single bed without overhead bunk or any overhead obstruction due to medical condition." (*Id.*) Plaintiff was housed in this manner in the Centinela State Prison Correctional Treatment Center until February 20, 2009 when he was transferred to Calipatria State Prison ("CAL"). When Plaintiff arrived at CAL he informed prison officials of his medical needs and showed them the Doctor's orders demonstrating his specific housing requirements. (*Id.* at 4.) Plaintiff indicates that he informed the medical personnel at CAL that he was in severe pain but they refused to permit Plaintiff to be examined by a Doctor. (*Id.*)

Plaintiff returned to CEN on February 27, 2009 and was informed that he would no longer be housed in the treatment center. (*Id.*). Instead, Plaintiff was housed in a double cell with a bunkbed in violation of Dr. Calvin's medical orders. (*Id.*) The nurse informed Plaintiff that she had received a fax from Dr. Calvin indicating that Plaintiff no longer needed such housing requirements but refused to show Plaintiff the documentation. (*Id.*) Plaintiff contends that recent testing shows Plaintiff suffers from severe nerve damage in his right lag and he suffers from extreme pain. (*Id.* at 5.) Plaintiff has attached two medical "chronos" to his Motion that are dated January 21, 2009 and signed by Samuel Ko, M.D. (*See* Pl.'s Mot., Exhibit "A.") These

chronos state "[Plaintiff] is to be in a single cell bed in General Population because of a medical condition," and "[Plaintiff] requires a medical accommodation for single bed without overhead bunk or any overhead obstruction due to medical condition." (*Id.*) In addition, Plaintiff has attached a "Comprehensive Accommodation Chrono" which appears to be signed by a "Davenport," dated February 6, 2009 with the handwritten notes "single bunk - no overhead objections - i.e. upper bunk." (*See* Pl.'s Mot., Exhibit "B.")

Plaintiff has also filed a "Declaration in Further Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction" in which he alleges to have been examined by Dr. Calvin on April 9, 2009 [Doc. No. 33]. (*See* Pl.'s Decl. at 1.) In this Declaration, Plaintiff claims Dr. Calvin denied ever informing any prison officials that Plaintiff no longer needed the housing specified in the medical chronos. (*Id.*)

Plaintiff seeks an Order from this Court ordering Defendants to provide him with the housing directed in the medical chronos in compliance with Dr. Calvin's original medical orders and the prevention of any further prison transfers unless Plaintiff is provided the appropriate housing. (Pl.'s Mot. at 5.)

### III. LEGAL STANDARD

#### A. Generally

In order to demonstrate the need for preliminary injunctive relief a party must show: "1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases)." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Where a party demonstrates that a public interest is involved, a "district court must also examine whether the public interest favors the plaintiff." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

#### B. Scope

In determining the scope of injunctive relief that interferes with the affairs of a state agency, the court must ensure, out of federalism concerns, that the injunction "heel[s] close to the identified violation," *Gilmore v. California*, 220 F.3d 987, 1005 (9th Cir. 2000) (citation

1  omitted), is not overly "intrusive and unworkable ... [and] would [not] require for its
2  enforcement the continuous supervision by the federal court over the conduct of [state officers]."
3  *O'Shea*, 414 U.S. at 500, 501; *see also Armstrong v. Davis*, 275 F.3d 849, 872 (9th Cir. 2001).

4  As the Ninth Circuit has noted, these concerns have been codified in the Prison Litigation
5  Reform Act, 18 U.S.C. § 3626 (PLRA).  *See Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir.
6  2001) (PLRA "has not substantially changed the threshold findings and standards required to
7  justify an injunction.").

8  The PLRA requires that prospective injunctive relief against a state prison system be "narrowly
9  drawn, extend[ ] no further than necessary to correct the violation of the Federal right, and [be]
10 the least intrusive means necessary to correct the violation of the Federal right."  *Id.* at
11 § 3626(a)(1); *Armstrong*, 275 F.3d at 872.

12 **IV.    APPLICATION TO PLAINTIFF'S CASE**

13 **A.    *Plata* action**

14 Defendants argue in their Opposition that this Court does not have the jurisdiction to issue
15 preliminary injunctive relief to Plaintiff as he is already a "member of a class action for equitable
16 relief from prison conditions" involving prison medical care.  (Defs.' Opp'n at 2.)  Defendants
17 are referring to the class action currently being litigated in the Northern District of California,
18 *Plata v. Schwarzenegger*, Civil Case No. C-01cv1352 (N.D. Cal. filed April 5, 2001).
19 Defendants have filed a "Request for Judicial Notice" in support of their Opposition and attach
20 a certified copy of the "Stipulation for Injunctive Relief" filed on June 13, 2002 in the *Plata*
21 matter [Doc. No. 29].  The Court will take judicial notice of the *Plata* matter, and more
22 specifically, the Court will take judicial notice of this stipulation.  A court "may take notice of
23 proceedings in other courts, both within and without the federal judicial system, if those
24 proceedings have a direct relation to matters at issue."  *United States ex rel. Robinson Rancheria*
25 *Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

26 Defendants argue that Plaintiff's claims for injunctive relief fall under the purview of the
27 *Plata* class action and thus, he cannot maintain a separate lawsuit for injunctive relief.  (Defs.'
28 Opp'n at 3-4.)  The *Plata* class action arose from a statewide concern by prisoners within the

California Department of Corrections and Rehabilitation ("CDCR") that they were not "receiving constitutionally adequate medical care as required by the Eighth Amendment to the U.S. Constitution and that the [CDCR is] not complying with the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act." (*See Plata* Stip. at ¶ 2.) The stipulation entered into between the members of the class action and the CDCR includes among its "Terms and Conditions" that the CDCR was to "implement Health Care Services Division Policies and Procedures" that are "designed to meet or exceed the minimum level of care necessary to fulfill the defendants' obligation to plaintiffs under the Eighth Amendment of the United States Constitution." (*Id.* at ¶ 4).

The agreement also provides the class action members to seek relief from the courts if the parties fail to resolve disputes according the procedure outlined in the stipulation. (*Id.* at ¶ 28.) Here, Defendants argue that Plaintiff has failed to meet this requirement before bringing this action. Specifically, Defendants point to Paragraph 7 of the *Plata* stipulation which provides:

> "The parties understand and agree that the 602/inmate-grievance procedure is an integral part of the provision of essential medical care and is integrated in the Polices and Procedures. Accordingly, the parties agree that, in the first instance, all complaints regarding medical care to an individual inmate, except those requiring urgent medical care, shall be submitted to the defendants after utilizing the inmate grievance procedure. If after the appeal has reached the third director's level of review and all administrative relief has been exhausted, or the [CDCR] has not responded to the inmate's appeal within 30 days at the Director's level of review and plaintiffs contend that the grievance process has failed to adequately address the problem, plaintiffs may bring the medical care concern to the attention of defense counsel, who shall respond in writing within 30 days. Plaintiffs' counsel may also contact the Chief Medical Officers at the institutions to inquire about the care furnished to particular inmates on a monthly basis. Defendants' counsel shall be notified about such contacts."

(*Id.* at ¶7.)

The Court finds Defendants' argument to be unpersuasive. It is not as clear to the Court that Plaintiff is automatically precluded from seeking injunctive relief for his medical related issues unless he first seeks relief as a member of the *Plata* class. Defendants rely on Paragraph 7 to state that Plaintiff must bring this request to the attention of the class defense counsel before he can bring it to a court. Paragraph 7, as set forth above, states an exception for those inmates requiring "urgent medical care." (*Id.*)   Plaintiff states in both his moving papers and his declaration that he suffers from "severe pain because the over head bunks in CDCR makes it

impossible for Plaintiff to sit straight in his cell." (Pl.'s Memo. of Ps&As at 1 in Support of Motion for TRO and Preliminary Injunction). Plaintiff also has submitted two medical chronos which he claims Defendants are ignoring.

Defendants do not address any of these issues in their Opposition. They fail to address Plaintiff's claims that he does have a need for "urgent medical care." Instead, Defendants cite to a number of unpublished District Court cases in which they claim the trial courts dismissed claims for injunctive relief which were seeking to address perceived inadequate medical care based on *Plata* class action lawsuit. (Defs.' Opp'n at 3.) Defendants include a cite to the Southern District of California lawsuit entitled *Gary v. Hawthorne*, 2007 WL 2781098 (S.D.Cal. Sept. 19, 2007). In *Gary*, the District Court dismissed Plaintiff's claims for injunctive relief because the plaintiff was seeking injunctive relief "in the form of better medical staffing and screening procedures for all inmates." *Id.* This case, and all the other cases cited by Defendants, are distinguishable because Plaintiff is not seeking relief on behalf of all the other inmates in the CDCR. He is seeking injunctive relief in the form of a Court Order requiring Defendants to following the specific medical instructions initially issued by Dr. Calvin, and later signed by Dr. Oh, relating to Plaintiff's specific medical housing needs. Despite Defendants' attempts to characterize Plaintiff's request as one of a broad based reform of the CDCR's medical practices which is the subject of the *Plata* litigation, his request is, in fact, quite narrow and specific to Plaintiff. Defendants cite to no authority that requires any plaintiff follow the *Plata* procedures when they are attempting to enforce a specific medical treatment or doctor's order related only to that individual plaintiff. In fact, because *Plata* allows for an exception of "urgent medical care" and it appears based on the allegations and documentation presented by Plaintiff, he may indeed have an "urgent medical care" the Court finds that Plaintiff is not prohibited by the *Plata* stipulation from bringing this motion for injunctive relief.

### B. LIKELIHOOD OF SUCCESS ON THE MERITS

Under the first test for a preliminary injunction, the moving party must demonstrate "high probability of success on the merits" of the case. *See Associated Gen. Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991).

1         The Eighth Amendment prohibits any punishment which violates civilized standards of
2 decency or involves the "unnecessary and wanton infliction of pain." *Ingraham v. Wright*, 430
3 U.S. 651, 670 (1977) (citing *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)).   Where an
4 inmate's claim is one of inadequate medical care, the inmate must allege "acts or omissions
5 sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v.*
6 *Gamble*, 429 U.S. 97, 106 (1976).  Such a claim has two elements: "the seriousness of the
7 prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v.*
8 *Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc.*
9 *v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997).  A medical need is serious "if the failure to treat
10 the prisoner's condition could result in further significant injury or the 'unnecessary and wanton
11 infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Indications
12 of a serious medical need include "the presence of a medical condition that significantly affects
13 an individual's daily activities."  *Id*. at 1059-60.  By establishing the existence of a serious
14 medical need, an inmate satisfies the objective requirement for proving an Eighth Amendment
15 violation.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

16         Here, in the December 10, 2008 Order, the Court has already determined that Plaintiff has
17 stated an Eighth Amendment claim sufficient enough to pass the Court's required sua sponte
18 screening per 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  (*See* Dec. 10, 2008 Order at 2.)
19 Defendants have not submitted any argument in their Opposition from which the Court could
20 find that Plaintiff does not have a serious medical need, nor do they offer any documentation to
21 show that Plaintiff's medical chronos are no longer valid.  Thus, Plaintiff has already met the
22 threshold burden of a likelihood of success on the merits.

23         **C.**    **IRREPARABLE HARM**

24         A plaintiff seeking a preliminary injunction must also demonstrate he will be exposed to
25 irreparable harm.  *Caribbean Marine Services*, 844 F.2d at 674.  However, a plaintiff need not
26 have suffered an actual injury to meet this requirement. *Diamontiney v. Borg*, 918 F.2d 793, 795
27 (9th Cir. 1990).  While speculative injury does not constitute sufficient irreparable injury, a
28 "strong threat of irreparable injury before trial is an adequate basis."  *Id.*   Here, Plaintiff's

allegations indicate that he has suffered from, and continues to suffer, severe pain due to the inadequate housing for his medical condition. Defendants offer, once again, no argument or documentation to rebut Plaintiff's allegations of ongoing harm. Thus, the Court finds that Plaintiff has shown that he is entitled to the equitable relief he seeks. *See San Diego County Gun Rights Comm.*, 98 F.3d at 1126; *Farmer*, 511 U.S. at 845.

**V.  Conclusion and Order**

For the foregoing reasons, the Court finds that Plaintiff has established both a strong likelihood of success on the merits and has shown he will be exposed to immediate irreparable harm if an injunction is not issued.

Therefor, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Preliminary Injunctive Relief pursuant to FED.R.CIV.P. 65 [Doc. No. 25] is **GRANTED**.

2. Pursuant to FED.R.CIV.P. 65(d), the Court hereby **ORDERS** Defendants to comply with the Medical Directions issued by Samuel Ko, M.D. on January 21, 2009 directing Plaintiff to be issued a single bed in a single cell without any overhead bunk or any overhead obstruction due to Plaintiff's medical condition. (*See* Pl.'s Motion for Preliminary Injunction, Exhibit "A.")

3. The Clerk of the Court is hereby **DIRECTED** to serve a copy of this Order upon Domingo Uribe, Jr., Acting Warden, California State Prison, Centinela.

**IT IS SO ORDERED.**

DATED: May 6, 2009

M. James Lorenz
United States District Court Judge