1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11   ESTER BURNETT,                    )    Civil No. 08-cv-1324-L(WVG)
                                       )
12              Plaintiff,             )    REPORT AND RECOMMENDATION:
                                       )    1.) DENYING PLAINTIFF'S MOTION TO
13   v.                                )    AMEND THE COMPLAINT;
                                       )    2.) GRANTING DEFENDANTS' MOTION TO
14   DR. DUGAN, MEDICAL DOCTOR;        )    DISMISS OF FAILURE TO EXHAUST CLAIMS;
     DR. HAWTHORNE, CMO (RJD);         )    AND
15   DR. BARRERAS, CMO (CEN);          )    3.)GRANTING DEFENDANTS' MOTION TO
     DR. FRAZE, MEDICAL DOCTOR;        )    DISMISS.
16   DR. KHATRI; MEDICAL DOCTOR;       )    (DOC. NOS. 89,88, & 87)
     VICTOR ALMAGER, WARDEN;           )
17   G.J. GIURBINO, WARDEN;            )
     _____, R.N.                   )
18                                     )
                Defendants.            )
19   _____)

20   I.        **Procedural Background**

21          Currently before the Court are three motions: Plaintiff's Motion to File a Supplemental

22   Complaint (Doc. No. 89); Defendants' Motion to Dismiss the Second Amended Complaint for

23   failure to exhaust his administrative remedies (Doc. No. 87); and Defendants' Motion to Dismiss

24   the Second Amended Complaint for failure to state a claim under the Eighth Amendment (Doc.

25   No. 88).

26          Ester Burnett ("Plaintiff"), a prisoner currently incarcerated at R. J. Donovan Correc-

27   tional Facility, proceeding pro se and *in forma pauperis,* has filed a civil rights action pursuant to

28   42 U.S.C. § 1983. Defendants, Doctors Barreras, Dugan, Fraze, Hawthorne, Khatri, and Victor

                                            1
                                                                              08cv1324

Almager ("Defendants") have filed a Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b) (Doc. No. 87) and 12(b)(6) (Doc. No. 88).  Plaintiff did not directly oppose the motions, but rather filed a Motion For Leave to File a Supplemental Complaint (Doc. No. 89). Defendants oppose Plaintiff's motion (Doc. No. 94) and Plaintiff replied (Doc. No. 95).

The Court, having reviewed the Second Amended Complaint, the exhibits attached thereto, and all motions and relevant attachments and oppositions, with GOOD CAUSE APPEAR-ING, HEREBY RECOMMENDS that Plaintiff's Motion to File a Supplemental Complaint (Doc. No. 89) be DENIED; Defendants' Motion to Dismiss the Second Amended Complaint for failure to exhaust (Doc. No. 87) be GRANTED; and Defendants' Motion to Dismiss the Second Amended Complaint for failure to state a claim under the Eighth Amendment (Doc. No. 88) be GRANTED.

**II.**     **Plaintiff's Factual Allegations**

Plaintiff's Second Amended Complaint names eight defendants and alleges that each Defendant violated both the Eighth Amendment and California State Government Code 845.6. All allegations stem from various accommodations that were denied or delayed despite Plain-tiff's medical diagnosis of degenerative lumbar disk syndrome and resulting back surgery.

Doctor Segal[1] diagnosed Plaintiff with "acute lumbar pain and lumbar disk disease" while he was housed at the California Men's Colony ("CMC").  (See SAC at 4.)[2]  Plaintiff's primary care physician at CMC, Dr. Griffin[3], subsequently recommended further treatment of his medical condition and that Plaintiff be housed at an institution where he would not have to climb stairs. (Id.) On July 27, 2006, Plaintiff was transferred to the Richard J. Donovan Correctional Facility ("Donovan") along with his entire medical file.  (Id.)

A.     Defendant Dugan

Defendant Dugan became Plaintiff's primary care physician while he was housed at Donovan. (Id.) Plaintiff charges Dr. Dugan with awareness that Plaintiff suffered from "chronic

---

[1] Dr. Segal is not a named defendant in this action.

[2] All citations to the SAC or Plaintiff's motions reflect the number assigned by the Court's e- filing stamp.

[3] Dr. Griffin is not a named defendant in this action.

08cv1324

1  benign back pain with possible nerve root irritation" and of Plaintiff's inability to climb stairs,

2  requiring a lower tier cell placement and lower bed.  (Id.)  Plaintiff asserts that Defendant Dugan

3  denied Plaintiff's request for a lower tier placement stating that his "medical condition did not

4  warrant the need for him to be housed on the lower tier."  (Id. at 5.) Furthermore, Plaintiff notes

5  that Defendant Dugan did not provide him "with a Neurologist for surgery." (Id.) Plaintiff claims

6  that the actions of Dr. Dugan caused him "needless pain and placed him at substantial risk of

7  serious harm."  (Id.)

8         B.    Defendant Hawthorne

9         Plaintiff notified Defendant Hawthorne, Donovan's Chief Medical Officer, of his

10  "serious medical need."  (Id. at 7.)  Defendant Hawthorne "chose to not follow [Dr. Griffin's] ...

11  treatment and denied the Plaintiff access to being housed on the lower tier."  (Id.)  Plaintiff

12  concedes that Defendant Hawthorne did prescribe a lower bunk. (Id.) However, one sentence

13  later, Plaintiff confusingly revokes this statement and charges Defendant Hawthorne with failure

14  to provide a lower bunk, and alleges that the bunk was denied "knowing it would cause

15  [Plaintiff] further pain and risk further significant injury." (Id.) Defendant Hawthorne also knew

16  that Plaintiff needed to be seen by a neurologist for further treatment but "made no effort to

17  make sure he would be seen thus intentionally interfering with the treatment that had previ-

18  ously been prescribed."  (Id.)

19         C.    Warden Defendants Guirbino[4] and Almager

20         Plaintiff was transferred to Centinela State Prison ("Centinela"). (See id. at 8-9, 19.) On

21  August 2, 2007, Plaintiff was also prescribed an extra mattress by Dr. Collinsworth.[5]  (Id. at 21.)

22  Plaintiff  names the former Warden of Centinela, Guirbino, as  "implementor and promulgator of

23  [an offensive] ... policy" from July 2002 that automatically denied any prisoner's request for an

24  extra mattress, even if prescribed by a doctor. (Id. at 14, 21.) Plaintiff charges Defendant

25

26

27

28

---

[4] Defendant Guirbino has not been served with the Second Amended Complaint or notice of this action. See III. Unserved Defendants, infra. at p.6.

[5] Dr. Collinsworth is not a party to this action.

08cv1324

1  Guirbino, with "intentional[ly] deny[ing] and delay[ing] [Plaintiff's] access to medical care." (Id.

2  at 14.)

3          Plaintiff names Defendant Almager, Warden for Centinela, for his continuance of the

4  no extra mattress policy.  (Id. at 14.)  Plaintiff alleges that Defendant Almager was responsible to

5  end any policy that infringed or encroached on inmates' constitutional rights. (Id.)  Plaintiff

6  claims that in January and February of 2008, Plaintiff wrote Almager letters concerning the

7  violations. (Id.)

8          While at Centinela, Plaintiff was provided a neurologist, Dr. Calvin[6], "who specializes in

9  neurological surgery and pain management." (Id. at 19.) On December 20, 2007, Dr. Calvin,

10  recommended Plaintiff undergo surgery and on January 30, 2008, the CDCR Medical Authoriza-

11  tion Review Committee approved the recommendation. (Id.)

12          D.          _____, R.N.[7]

13          Plaintiff alleges that _____, a Registered Nurse, was the Specialty Appointment

14  Scheduler at Centinela State Prison while he was awaiting surgery. (Id. at 19.) Plaintiff asserts

15  that this nurse, "had the personal responsibility to ensure Plaintiff was scheduled for and had

16  surgery within 14 to 90 days of Plaintiff's approv[al for] surgery ... and failed to schedule the

17  surgery within the allotted time frame, ... [leaving] Plaintiff [to] suffer[] 149 days of excruciating

18  severe pain." (Id.)

19          On July 24, 2008, Plaintiff did receive back surgery, performed by Dr. Calvin. (Id. at 9.)

20  Plaintiff contends that prior to surgery, in late June 2008, Dr. Calvin "ordered a raised toilet seat

21  for Plaintiff to relieve pain post surgery." (Id.) Following surgery, in September 2008, Plaintiff

22  further credits Dr. Calvin with recommending that Plaintiff be housed in the Correctional

23  Treatment Center ("CTC"). (Id.)  Plaintiff reasons that Dr. Calvin prescribed the CTC due to

24  "Plaintiff not being able to sit straight in a cell in general population ... [as] the upper bunk in all

25

26  _____

27  [6]Dr. Calvin is not a defendant in this action.

28  [7] This is the method by which Plaintiff identifies this defendant. The Court adopts Plaintiff's identification of
this defendant. Defendant_____,RN. has not been served with the Second Amended Complaint or notice
of this action. See III. Unserved Defendants, infra. at p.6

08cv1324

1   cells in general population are not high enough ... for Plaintiff to set(sic) straight" while resting

2   on a bottom bunk. (Id. at 15.)

3          E.      Dr. Khatri

4          After surgery, Plaintiff remained at Centinela. Plaintiff alleges that Centinela Primary

5   Care Physician, Dr. Khatri, informed Plaintiff that Dr. Calvin had stated Plaintiff no longer

6   suffered from a mobility problem. (Id. at 16.) Consequently, on August 13, 2008, Dr. Khatri

7   removed Plaintiff from the Disability Placement Program ("DPP"). (Id.) When Dr. Khatri removed

8   Plaintiff from DPP, Plaintiff was forced to sit with his back arched which caused him severe

9   pain." (Id.) Plaintiff later visited Dr. Calvin in October 2008, and Dr. Calvin denied terminating

10  Plaintiff's mobility restrictions, instead stating that Plaintiff "would always have a mobility

11  problem and would never fully recover." (Id.) Plaintiff further charges Dr. Kahtri with responsibil-

12  ity for not receiving the raised toilet seat recommended by Dr. Calvin. (Id. at 17.)

13         F.      Dr. Barreras

14         Prior to October 2008, Dr. Barreras supervised Dr. Khatri as Chief Medical Officer at

15  Centinela. (Id. at 9.) In August 2008, Dr. Barreras examined Plaintiff's grievance and advised that

16  Plaintiff be admitted back to CTC.  (Id. at 9.) Plaintiff also wrote Dr. Barreras a letter "concerning

17  the denial of a raised toilet seat[, and] extra mattress]...Barreras still denied and delayed the

18  treatment." (Id. at 10.) Plaintiff credits Defendant Barreras' actions with causing him "significant

19  and unnecessary wanton infliction of pain." (Id.) Nonetheless, Dr. Barreras "delayed the

20  recommendation and ... seriously needed medical care ordered by Dr. Calvin." (Id. at 9.) Plaintiff

21  also notes that "Dr. Barreras did not commit the cruel and unusual punishment ... [rather she]

22  became responsible for them when she failed to correct them in the course of her supervisory

23  responsibilities." (Id. at 10.)

24         G.      Dr. Fraze

25         While at Centinela, nearly a year after his surgery, Plaintiff was seen by primary care

26  physician, Dr. Fraze. (Id. at 12.) Plaintiff complains that at an examination in July 2009, Dr. Fraze

27  informed Plaintiff that "there is nothing wrong with him, and it's all mental."  (Id.) Defendant

28  Fraze also refused to order Plaintiff a "raised toilet seat" as recommended by Dr. Calvin and

1  consequently "exposed Plaintiff ... to over 77 days of severe needless pain while using [a] toilet."

2  (Id.)

3  **III.** **Unserved Defendants**

4  Plaintiff has named Defendant "_____, A Registered Nurse [who] was the Specialty

5  Appointment Scheduler at Centinela State Prison" in this matter.  (See SAC at 3, 17.)  However,

6  there is little evidence in the Court's docket to reflect that Plaintiff has ever attempted to

7  discover the identify of "_____, a Registered Nurse." Plaintiff has implicitly suggested that the

8  anonymous defendant may be identifiable as "Sandoval." (See Doc. 86.) Plaintiff's letter identifies

9  pages and line numbers where "the name of defendant Sandoval" is missing. (Doc. 86.)  The

10  blanks noted in Plaintiff's letter at times, but not perfectly, coincide with _____, RN noted in

11  the Second Amended Complaint. (Docs. 86, 83.) However, the letter does not conclusively

12  indicate that _____, RN should be replaced by Sandoval. Furthermore, Plaintiff has failed to

13  serve this Defendant. Federal Rule of Civil Procedure 4(m) imposes a 120 day time limit in which

14  Plaintiff must serve a Defendant. See Fed. R. Civ. P. 4(m). Plaintiff filed his Second Amended

15  Complaint on November 10, 2009. Plaintiff provided the Court with no evidence of actual or

16  attempted service on _____, RN. Thus, the Court RECOMMENDS that Defendant "_____,

17  RN" be DISMISSED from this action.

18  Plaintiff has also failed to present evidence that he served Defendant G.J. Giurbino,

19  alleged former warden of Centinela State Prison with notice of this action or the Second

20  Amended Complaint. Under the 120 day service deadline imposed by Federal Rule of Civil

21  Procedure 4(m), Plaintiff has far exceeded the 120 day time limit to serve G.J. Guirbino. Accord-

22  ingly, the Court RECOMMENDS that Defendant Guirbino be dismissed from this action.

23  **IV.** **The Prison Litigation Reform Act Mandates Exhaustion of Administrative Remedies Prior to Bringing Suit**

24  A.   Arguments

25  Plaintiff seeks to add to the claims in the Second Amended Complaint by filing a

26  supplemental complaint describing events that occurred after the date he filed the instant suit.

27  (See Doc. 89.) Similarly, Plaintiff's Second Amended Complaint raises claims against Defendants

28  Doctors Khatri, Fraze, and Barreras, as supervisor of Khatri, for failure to provide a raised toilet

1  seat after Plaintiff's back surgery; Defendants seek dismissal of this claim on grounds that Plaintiff

2  has failed to exhaust his administrative remedies pursuant to Rule 12(b).

3          B.     Exhaustion Is Mandatory

4        The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) to provide

5  that "[n]o action *shall be brought* with respect to prison conditions under section 1983 . . . by a

6  prisoner confined in any jail, prison or other correctional facility until such administrative

7  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Once within the discretion of

8  the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."  Porter v. Nussle,

9  534 U.S. 516, 532 (2002).  Courts have construed exhaustion under 42 U.S.C. § 1997e(a) strictly to

10  "afford ... corrections officials time and opportunity to address complaints internally before

11  allowing the initiation of a federal case, id. at 525-26, and to encompass inmate suits about both

12  general circumstances and particular episodes of prison life.  Id. at 532.

13          C.     Plaintiff's Motion to File A Supplemental Complaint

14        Plaintiff moves this court to grant him leave to file a supplemental complaint. (Doc. No.

15  89.) Plaintiff's Proposed Supplemental Complaint seeks to add fourteen new defendants and

16  multiple new claims alleging Eighth Amendment and due process violations. However, under the

17  PLRA "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under  §1983 may be

18  entertained," "regardless of the relief offered through administrative procedures."  Booth v.

19  Churner, 532 U.S. 731, 738, 741 (2001); see also McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th

20  Cir. 2002) (finding that prisoner's civil rights action must be dismissed without prejudice unless

21  prisoner exhausted available administrative remedies before he filed suit, even if he fully

22  exhausts while the suit is pending). The McKinny Court reasoned that "section 1997(e) mandates

23  that no action shall be brought ... [and that] language clearly contemplates exhaustion *prior* to

24  the commencement of an action as an indispensable requirement."(emphasis in original)

25  McKinny, 311 F.3d at 1199.

26            i.    Standard of Review

27        Federal Rule of Civil Procedure 15(d) provides that a party may "serve a supplemental

28  pleading setting forth transactions or occurrences or events which have happened since the date

1  of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). However, in a "conflict

2  between Federal Rule of Civil Procedure 15 and the PLRA, the rule would have to yield to the

3  later-enacted statute to the extent of the conflict." Harris v. Garner, 216 F.3d 970, 982 (11th Cir.

4  2000). Rule 15 "does not and cannot overrule a substantive requirement or restriction contained

5  in a statute (especially a subsequently enacted one)." Id. at 983; see also Cox v. Mayer, 332 F.3d

6  422, 428 (6th Cir.2003) (citing Harris for this proposition with favor). Allowing Plaintiff to add

7  newly accrued claims would allow Plaintiff to thwart the mandate of section 1997e(a), which

8  requires that claim exhaustion occur prior to filing suit and not during the pendency of the suit.

9  McKinney, 311 F.3d at 1199-1201. Accordingly, this controlling case law bars Plaintiff from filing

10  the proposed supplemental complaint if all claims alleged within the supplement were unex-

11  hausted prior to July 22, 2008, when Plaintiff first brought the instant lawsuit.

12               ii.     Analysis

13         All claims Plaintiff seeks to add occurred after July 22, 2008, the date on which he filed

14  his original complaint, and could not possibly have been exhausted prior to Plaintiff bringing the

15  instant action. Plaintiff's claims in his proposed supplemental complaint all post-date July 22,

16  2008, and occurred primarily in February and March 2009. In February 2009, Plaintiff was

17  transferred from Centinela State Prison, a level three prison, to Calipatria State Prison, a level

18  four security facility. Plaintiff was returned to Centinela State Prison within a week. Plaintiff

19  considers his relocation and return a violation of notice and procedural requirements. Plaintiff

20  also declares a conspiracy by medical staff and prison officials to deprive him of housing

21  accommodations prescribed by his back surgeon, Dr. Calvin. A few of Plaintiff's claims are distinct

22  from the transfer, however, these claims also do not predate the filing of the instant lawsuit.

23               a.)     Dr. Davenport & Dr. Levin

24         Plaintiff names J. Davenport as Primary Care Physician at Centinela State prison as a

25  potential defendant. Plaintiff alleges that Dr. Davenport was on notice since February 20, 2009,

26  that he and other defendants planned to deny Plaintiff medical care. (Proposed Supplemental

27  Compl. at Claim 2.) Plaintiff further claims against Dr. Davenport for failure to properly accommo-

28  date Plaintiff's housing needs on March 17, 2009.

1     Similarly, Plaintiff names M. Levin as Chief Medical Officer and Primary Care Physician

2   at Centinela. Plaintiff's earliest claim against Dr. Levin factually arose on February 20, 2009, when

3   Dr. Levin "conspired ... to deny Plaintiff ... prescribed or recommended treatment" and initiated

4   Plaintiff's transfer between Centinela and Calipatria State Prisons. Prior to this, on February 6,

5   2009, Dr. Levin allegedly informed plaintiff he was seeking a route around Dr. Calvin's orders.

6   Plaintiff was further offended by Dr. Levin's treatment upon his return to Centinela State prison.

7   (Proposed Supplmental Compl. at Claim 1.)

8                                 b.)     Dr. Shiller

9     Plaintiff names Dr. Shiller as Primary Care Physician at Centinela and alleges that on

10  "March 18, 2009... [Dr. Shiller] denied Plaintiff ... single bed housing. (Proposed Sup. Complaint,

11  Count 3 at 1.) Plaintiff includes a catch all allegation by noting that "Dr. Shiller and the Centinela

12  Medical Department from July 24, 2008 to May 11, 2009 ... used deceit and deception to deny

13  Plaintiff seriously needed medical care." (Proposed Supplemental Compl. at Claim 3.) Plaintiff

14  alleges further that regarding his brief transfer to Calipatria, that Dr. Shiller planned to deny

15  Plaintiff medical care in concert with other defendants from February 20, 2009. (Proposed

16  Supplemental Compl. at Claim 2.)

17    Plaintiff attributes Dr. Shiller with knowledge of Plaintiff's housing needs "as far back

18  as May 14, 2008 [as] it was Dr. Shiller who fist responded to Dr. Calvin's recommendation."

19  (Proposed Supplemental Compl. at Claim 3.) However, Plaintiff notes that on this early occasion,

20  Dr. Shiller "move[d] Plaintiff to the Correctional Treatment Center to accommodate Plaintiff['s]

21  medical needs." (Proposed Supplemental Compl. at Claim 3.) By Plaintiff's own admissions no

22  Constitutional violations arose from Dr. Schiller's action on this date.

23                                 c.)     Dr. Hjerper, Dr. Ball, and Jane Doe

24    Plaintiff charges Dr. Hjerper, Primary Care Physician at Calipatria, for alleged violations

25  that arise from events on February 26, 2009. Plaintiff alleges Dr. Hjerper "intentionally falsif[ied]

26  Plaintiff's medical records by misrepresenting that Dr. Calvin had changed his recommended

27  accommodations following Plaintiff's surgery." (Proposed Supplemental Compl. at Claim 4.)

28  Plaintiff's allegations arise against Dr. Ball, Chief Medical Officer at Calipatria, no earlier than

08cv1324

1    February 20, 2009 for Dr. Ball's failure to accommodate Plaintiff's housing needs and participa-

2    tion in Dr. Hjerper's conspiracy to falsify medical records. (Proposed Supplemental Compl. Count

3    5.) Also charged with the conspiracy is Jane Doe, Registered Nurse - RN at Centinela, for conspir-

4    acy to deny housing accommodations and falsify medical records claims arising on February 20,

5    and February 27, 2009. (Proposed Supplemental Compl. at Claim 5.)

6                            d.)      Dr. Vo & John Doe

7              Plaintiff charges Dr. Vo with responsibility for failing to accommodate Plaintiff's

8    medical needs, and signing papers that resulted in Plaintiff's transfer back to Centinela State

9    Prison on February 27, 2009. (Proposed Supplemental Compl. at Claim 7.) Plaintiff also names

10   John Doe Primary Care Physician at Centinela for similar violations and failures to accommodate

11   housing needs arising March 4, 2009 or later. (Proposed Supplemental Compl. at Count 11.)

12                           e.)      Warden Uribe & Warden Smalls

13             Warden Uribe, Warden of Centinela, is alleged to have conspired on February 20,

14   2009, with other proposed defendants, to deny Plaintiff housing accommodations. (Proposed

15   Supplemental Compl. at Count 8.) Plaintiff also believes that Warden Uribe did not properly

16   follow procedures or notice requirements in transferring Plaintiff from Centinela, a level three

17   prison, to Calipatria, a level four security prison. (Proposed Supplemental Compl. at Count 8.)

18   Similarly, Warden Smalls, Warden at Calipatria is also alleged to have conspired as early as

19   February 20, 2009, with other proposed defendants, to deny Plaintiff housing accommodations.

20   (Proposed Supplemental Compl. at Count 9.) Plaintiff also believes that Warden Smalls did not

21   properly follow procedures or notice requirements when Plaintiff was returned to Centinela from

22   Calipatria. (Proposed Supplemental Compl. at Count 9.)

23                           f.)      Dr. Fraze

24             Plaintiff attempts to bring a new claim against Dr. Fraze, already named in the Second

25   Amended Complaint as Primary Care Physician at Centinela. (Proposed Supplemental Compl. at

26   Claim 10.) Plaintiff's new claims against Dr. Fraze mirror the claims alleged against the other

27   proposed defendants in the supplemental complaint and date back to February 20, 2009.

28   Although Dr. Fraze is a named defendant already included in the Second Amended Complaint, the

1   events described in the proposed supplemental complaint are factually distinct from those

2   described in the Second Amended Complaint. The events described in the proposed supplement

3   do not relate to the events detailed in the Second Amended Complaint. Judicial economy favors

4   all claims relating to the same transaction or occurrence to be brought in a single lawsuit and

5   disfavors allowing Plaintiff to add these claims against Dr. Fraze in the instant suit. Furthermore,

6   exhaustion requirements clearly bar Plaintiff from adding this claim against Dr. Fraze in the

7   instant lawsuit.

8                   g.)   Keys, Correctional Counselor I, & Pope, Correctional Counselor II

9          Plaintiff's proposed supplemental complaint also alleges claims against Keys, Correc-

10  tional Counselor I, at Centinela, and Pope, Correctional Counselor II, Plaintiff brings suit against

11  Pope and Keys for violations dating back to March 13, 2009. (Proposed Supplemental Compl. at

12  Count 12 & 13.)

13                  h.)   RN Gerardo & RN Gonzalez

14         Plaintiff's final defendants are RN Gerardo and RN Gonzalez whose offending actions

15  date back to December 8, 2008. RN Gerardo in concert with RN Gonzalez allegedly served

16  Plaintiff's medications after dinner which upset his stomach, nonetheless, this claim arose after

17  Plaintiff originally filed this lawsuit. While Plaintiff alleges actions distinct from his transfer to

18  Calipatria and return to Centinela, RN Gerardo's and Gonzalez's alleged constitutional violations

19  do not predate the original complaint in this case.

20             iii.   Conclusion

21         All claims[8] in Plaintiff's proposed supplemental complaint arose after Plaintiff filed the

22  instant lawsuit and could not have been exhausted prior to July 22, 2008. The Ninth Circuit's clear

23  interpretation of the PLRA *will* require the court to dismiss the supplemental complaint without

24  prejudice *if* it is allowed to be formally filed, thus filing is futile. Accordingly, in the interest of

25  judicial economy the Court RECOMMENDS that Plaintiff's request to file a supplemental

26

27

28

[8]Excepting Dr. Schiller's accommodations on May 14, 2008, that Plaintiff admits is not a Constitutional violation.

08cv1324

1   complaint be DENIED as it is clear from the face of the proposed supplemental complaint that all

2   claims were unexhausted as of the date the instant lawsuit was brought.

3                   C.      Second Amended Complaint Claims Regarding Raised Toilet Seat

4           Plaintiff's Second Amended Complaint raises claims against Defendants Doctors Khatri,

5   Fraze, and Barreras, as supervisor of Khatri, for failure to provide a raised toilet seat after

6   Plaintiff's back surgery. Defendants seek dismissal of this claim on grounds that Plaintiff has failed

7   to exhaust pursuant to Rule 12(b). The State of California provides its prisoners and parolees the

8   right to administratively appeal "any departmental decision, action, condition or policy perceived

9   by those individuals as adversely affecting their welfare."  Cal. Code Regs., tit. 15 § 3084.1(a).  In

10  order to exhaust available administrative remedies within this system, a prisoner must proceed

11  through several levels:  (1) informal resolution, (2) formal written appeal on a CDC 602 inmate

12  appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal

13  to the Director of the California Department of Corrections.  Barry v. Ratelle, 985 F. Supp. 1235,

14  1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15 § 3084.5).   The third or "Director's Level" of

15  review "shall be final and exhausts all administrative remedies available in the Department [of

16  Corrections.]"  See Cal. Dep't of Corrections Operations Manual, § 54100.11, "Levels of Review;"

17  Barry, 985 F. Supp. at 1237-38; Irvin v. Zamora, 161 F. Supp. 2d 1125, 1129 (S.D. Cal. 2001.)

18                        i.      Standard of Review per Federal Rule of Civil Procedure 12(b) and 42
                                  U.S.C. § 1997e

19          Defendants claim Plaintiff failed to exhaust available administrative remedies as to the

20  raised toilet seat claims pursuant to 42 U.S.C. § 1997e(a) before bringing this suit, therefore, they

21  seek dismissal under the "non-enumerated" provisions of Fed. R. Civ. Pro. 12(b).  The Ninth Circuit

22  has held that "failure to exhaust nonjudicial remedies is a matter of abatement" not going to the

23  merits of the case and is properly raised pursuant to a motion to dismiss, including a non-

24  enumerated motion under Federal Rule of Civil Procedure 12(b).  See Ritza v. Int'l Longshoremen's

25  & Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir. 1988); Wyatt v. Terhune, 315 F.3d 1108,

26  1119 (9th Cir. 2003) (finding a non-enumerated motion under Rule 12(b) to be "the proper pretrial

27

28

08cv1324

1    motion for establishing nonexhaustion" of administrative remedies under 42 U.S.C. § 1997e(a)).[9]

2    Wyatt also holds that non-exhaustion of administrative remedies as set forth in 42 U.S.C. §

3    1997e(a) is an affirmative defense which defendant prison officials have the burden of raising and

4    proving.  Wyatt, 315 F.3d at 1119.  However, unlike under Rule 12(b)(6), "[i]n deciding a motion to

5    dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and

6    decide disputed issues of fact."  Id. at 1120 (citing Ritza, 837 F.2d at 369).

7                    ii.        Application of 42 U.S.C. § 1997e(a) to Plaintiff's Case

8            To support their claim that Plaintiff did not exhaust his administrative remedies with

9    respect to his Eighth Amendment claim for failure to provide a raised toilet seat following back

10   surgery, Defendants provide the declaration of D. Foston, the Acting Chief of Inmate Appeals

11   Branch, and D.J. Degeus, the Appeals Coordinator at Centinela State Prison.  D. Foston declares

12   claims that there is no record of any Third Level Inmate Appeal from Centinela State Prison Log

13   Number CEN-M-08-1165. (See Defs.' Mot, D. Foston Declaration at ¶¶ 7 - 9.) Similarly, D.J. Degeus

14   has reviewed the records of inmate appeals at Centinela State Prison, and it is clear Plaintiff only

15   appealed his post surgery accommodations to the first level. (See Defs.' Mot, D. J. Degeus

16   Declaration at ¶¶ 6-7.)

17           Plaintiff claims that he did exhaust all administrative appeals regarding the raised toilet

18   seat. (See Pl.'s Motion at 6.)  In support, Plaintiff points to his Exhibit Brown[10] and Exhibit C.

19   However, while Plaintiff's Exhibit Brown demonstrates exhaustion of his extra mattress grievance,

20   (see Pl.'s Motion, Ex. Brown), Exhibit C clearly illustrates that Plaintiff's raised toilet seat grievance,

21   was not exhausted. (See Pl.'s Motion, Ex. C.) Page nine of Exhibit C is a memorandum from

22   Centinela State Prison; it notes that the issue of a raised toilet seat, "will not be addressed herein,

23   as th[is] appeal issue[] was addressed in prior appeals." (Id. at Ex. C, p. 9.) The memorandum then

24   cites to the appeal number, CEN-M-08-1165, that is noted in the declarations of D. Foster and D.J.

25

26       [9] In so finding, the Ninth Circuit also made clear that unlike a motion for summary judgment, "dismissal of an
         action on the ground of failure to exhaust administrative remedies is not on the merits."  Wyatt, 315 F.3d

27       at 1119 (citation omitted).  Thus, if the court finds that the prisoner has failed to exhaust non-judicial
         remedies, "the proper remedy is dismissal of the claim without prejudice."  Id. (citing Ritza, 837 F.2d at 368
28       & n.3).

         [10]Plaintiff's original title classification for his exhibit.

08cv1324

1   Degeus, as unexhausted because it was never appealed beyond the first level of review. (See id.;

2   Defs.' Mot, D. Foston Declaration at ¶¶ 7 - 9; D. J. Degeus Declaration at ¶¶ 6-7.)

3            The Supreme Court has made clear that Plaintiff must "properly exhaust" his adminis-

4   trative remedies before filing a prison conditions action.  In Woodford v. Ngo, 548 U.S. 81 (2006),

5   the Supreme Court held that "[p]roper exhaustion demands compliance with an agency's

6   deadlines and other critical procedural rules because no adjudicative system can function

7   effectively without imposing some orderly structure on the course of its proceedings."  Woodford,

8   126 S.Ct. at 90-91.  The Court further held that "[proper exhaustion] means ... a prisoner must

9   complete the administrative review process in accordance with the applicable procedural rules ...

10  as a precondition to bring suit in federal court."  Id.

11            iii.     Conclusion

12            The exhibits attached to Plaintiff's Motion to File a Supplemental Complaint, together

13  with the Declarations submitted by the defendants, demonstrate that the appeal regarding the

14  raised toilet seat is unexhausted. As a result, Plaintiff has failed to rebut Defendants' showing that

15  he failed to properly exhaust his administrative grievances with respect to these claims. Further-

16  more, because Plaintiff did not submit a first formal level appeal within fifteen days of his informal

17  level response, any attempt to file the grievance now is untimely and no exceptions apply. See

18  Cal.Code Regs. tit. 15, § 3084.6(c)); Woodford, 548 U.S. at 95-96; see also Booth, 532 U.S. at 741

19  (exceptions to the exhaustion requirement are limited) (footnote omitted). Thus, the Court

20  RECOMMENDS that Plaintiff's raised toilet seat claim be DISMISSED for Plaintiff's failure to

21  exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

22  **V.        Defendants' Motion To Dismiss For Failure To State A Claim**

23            A.     Defendants' Arguments

24            All Defendants seek dismissal under 12(b)(6) on grounds that Plaintiff can not base a

25  claim for violation of constitutional rights against Defendants on a theory of vicarious liability or

26  respondeat superior and because Plaintiff has failed to allege facts sufficient to show that any of

27  them acted with deliberate indifference to his serious medical needs in violation of the Eighth

28

1   Amendment.  (See Defs.' P. & A. at 1, 9-10, 18.) Defendants further argue that the Court should

2   subsequently decline to exercise supplemental jurisdiction over the state law claims. (Id. at 24-25.)

3              B.      Federal Rule of Civil Procedure 12(b)(6) Standard of Review

4              A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory'

5   or 'the absence of sufficient facts alleged under a cognizable legal theory.'" Johnson v. Riverside

6   Healthcare System, LP, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting Balistreri v. Pacifica Police

7   Dep't, 901 F.2d 696, 699 (9th Cir. 1990)).  In other words, the Plaintiff's complaint must provide a

8   "short and plain statement of the claim showing that [he] is entitled to relief." Id. (citing Fed. R.

9   Civ. P. 8(a)(2)). A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to

10  state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

11  (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the

12  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13  Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009) . However, "[t]hreadbare recitals of the

14  elements of a cause of action, supported by mere conclusory statements, do not suffice ... [the

15  Court is] not bound to accept as true a legal conclusion couched as a factual allegation." Id. at

16  1950.

17             In addition, factual allegations asserted by pro se petitioners, "however inartfully

18  pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." Haines

19  v. Kerner, 404 U.S. 519-20 (1972).  Thus, where a plaintiff appears in propria persona in a civil

20  rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the

21  doubt.  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988).

22             Nevertheless, and in spite of the deference the court is bound to pay to any factual

23  allegations made, it is not proper for the court to assume that "the [plaintiff] can prove facts

24  which [he or she] has not alleged." Associated General Contractors of California, Inc. v. California

25  State Council of Carpenters, 459 U.S. 519, 526 (1983).  Nor must the court "accept as true

26  allegations that contradict matters properly subject to judicial notice or by exhibit" or those which

27  are "merely conclusory," require "unwarranted deductions" or "unreasonable inferences."

28  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (citation omitted), amended on

1   other grounds, 275 F.3d 1187 (9th Cir. 2001); see also Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th

2   Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the

3   form of factual allegations). Thus, at a minimum, even the pro se plaintiff "must allege with at

4   least some degree of particularity overt acts which defendants engaged in that support [his]

5   claim."  Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984).

6           C.    Defendants Cannot Be Liable Under the Theory of Vicarious Liability or
                  Respondeat Superior

7           Defendants seek dismissal of some of Plaintiff's claims on grounds that Plaintiff cannot

8   allege respondeat superior liability under section 1983. (See Deft's. P. & A. at 11.) To hold a person

9   "liable under section 1983 there must be a showing of personal participation in the alleged rights

10  deprivation." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  A supervisory official may be

11  liable only if he or she was personally involved in the constitutional deprivation, or if there was a

12  sufficient causal connection between the supervisor's wrongful conduct and the constitutional

13  violation.  See Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). The doctrine of

14  respondeat superior and vicarious liability do not exist under § 1983. Jones, 297 F.3d at 934.

15  Causation may be established only by showing that the supervisor set in motion a series of acts by

16  others, which the supervisor knew or reasonably should have known would cause others to inflict

17  the injury.  Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

18          D.    Eighth Amendment Inadequate Medical Treatment Claims

19          Defendants seek dismissal of Plaintiff's Complaint on grounds that he has failed to

20  plead facts to show the deliberate indifference required to support an Eighth Amendment

21  violation.  (See Defs.' P. &A. at 9 -10.)

22          i.    Standard of Review

23          To constitute cruel and unusual punishment in violation of the Eighth Amendment,

24  prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v.

25  Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to

26  the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of

27  the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with

28  deliberate indifference in doing so.'"  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)

1   (quoting <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  Before it can be

2   said that a prisoner's civil rights have been abridged, "the indifference to his medical needs

3   must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support

4   this cause of action."  <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing

5   <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976)).  "[A] complaint that a physician has been

6   negligent in diagnosing or treating a medical condition does not state a valid claim of medical

7   mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitu-

8   tional violation merely because the victim is a prisoner."  <u>Estelle</u>, 429 U.S. at 106; <u>see also</u>

9   <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995).

10         A prison official does not act in a deliberately indifferent manner unless the official

11   "knows of and disregards an excessive risk to inmate health or safety."  <u>Farmer v. Brennan</u>, 511

12   U.S. 825, 834 (1994).  Deliberate indifference may be manifested "when prison officials deny,

13   delay or intentionally interfere with medical treatment," or in the manner "in which prison

14   physicians provide medical care."  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992),

15   <u>overruled on other grounds</u>, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

16   banc).  Where a prisoner alleges delay in receiving medical treatment, he must show that the

17   delay led to further harm.  <u>Id.</u> at 1060 (citing <u>Shapely v. Nevada Bd. of State Prison Comm'rs</u>, 766

18   F.2d 404, 407 (9th Cir. 1985)).  "Deliberate indifference is a high legal standard."  <u>Toguchi</u>, 391 F.3d

19   at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which

20   the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must

21   also draw the inference.'"  <u>Id.</u> at 1057 (quoting <u>Farmer</u>, 511 U.S. at 837).  "'If a prison official

22   should have been aware of the risk, but was not, then the official has not violated the Eighth

23   Amendment, no matter how severe the risk.'"  <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>,

24   290 F.3d 1175, 1188 (9th Cir. 2002)).

25         **ii.**     <u>Application to Plaintiff's Allegations</u>

26              a.     <u>Claims against Defendant Dugan</u>

27         Plaintiff makes claims against Defendant Dugan as his primary care physician at RJ

28   Donovan. Plaintiff alleges that Defendant Dugan defied previous doctor's recommendations and

1    denied him access to lower tier housing. (Doc. 83 at 4-5). Plaintiff charges Defendant Dugan with

2    knowledge that, "Plaintiff could not climb stairs and that he needed to be housed on the lower

3    tier, and have a lower bed, and that he had been sent to RJD because it was a level terrain

4    facility." (Doc. 83 at 4-5.) Plaintiff claims that these actions exposed Plaintiff to "unnecessary and

5    wanton infliction of chronic pain." (Doc. No. 83 at 5.)

6            Defendants accurately point out that documents attached to the Second Amended

7    Complaint establish that on September 11, 2006, Defendant Dugan physically examined Plaintiff

8    and determined that Plaintiff's housing request was not justified based on the examination and a

9    review of the DPPV form which did not list a "no stairs" housing restriction, medical records, and

10   internal prison standards that must be met for a no stairs assignment. (Doc. 83-2 at 3-4, 11, 15-16,

11   20-22, 52.) Defendant Dugan did provide plaintiff with the alternative of a lower bunk, pain

12   medication, and a physical therapy referral. (Doc. 83-2 at 20-21.)

13           Plaintiff's claims against Defendant Dugan do not rise to the Eighth Amendment's

14   "deliberate indifference" standard. Defendant Dugan accommodated Plaintiff's medical needs by

15   recommending Plaintiff be placed in a lower bunk, prescribing pain medication, and referral for

16   physical therapy. (Doc. 83-2 at 20-21.) A prisoner's simple disagreement with his physician's

17   treatment does not rise to an Eighth Amendment violation. See Estelle, 429 U.S. at 106 (holding

18   that even medical malpractice is not an automatic constitutional violation.) The facts set forth in

19   the Second Amended Complaint, viewed in a light most favorable to Plaintiff, do not establish that

20   Defendant Duran wantonly and unnecessarily inflicted plain upon Plaintiff.  Rather the facts

21   alleged, coupled with the attached documents, demonstrate that Defendant Duran attempted to

22   accommodate Plaintiff's chronic pain and prescribe adjustments that were intended to treat his

23   condition and lessen his pain. Accordingly, the Court recommends that the claims against

24   Defendant Duran be DISMISSED.

25                         b.      Claims against Defendant Hawthorne

26           Plaintiff alleges that "Dr. Hawthorne chose not to follow the previous doctor's

27   prescribed treatment and denied the Plaintiff access to being housed on the lower tier. But, did

28   give him a lower bunk." (Doc. No. 83 at 7.) Plaintiff also claims that Dr. Hawthorne "knew of

1    plaintiff's need to be seen by a neurologist, for further treatment of his medical condition and

2    made no effort to make sure that he would be seen thus intentionally interfering with the

3    treatment that had been previously prescribed and intentionally denied and delayed plaintiff

4    access to medical care once prescribed." (Doc. No. 83 at 7.)

5            Defendants correctly contend that the documents attached to the Second Amended

6    Complaint establish that Defendant Hawthorne acted as a supervisor who conducted the second

7    level review of Plaintiff's appeal for failure to provide no stairs housing. (Doc. 83-2 at 11,22.)

8    Defendant Hawthorne reviewed Defendant Dugan's recommendations, Plaintiff's physical exam

9    results, and medical records. (Doc. 83-2 at 11, 15, 22.)

10           Defendants persuasively argue that all claims against Defendant Hawthorne should be

11   dismissed because Defendant Hawthorne acted only in a supervisory role and cannot be liable

12   under section 1983 and additionally because Plaintiff fails to satisfy the "deliberate indifference

13   standard of the Eighth Amendment." (Deft's P. & A. at 12-13.)  A supervisory official may be liable

14   only if he or she was personally involved in the constitutional deprivation, or if there was a

15   sufficient causal connection between the supervisor's wrongful conduct and the constitutional

16   violation.  See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). Upon review of

17   Plaintiff's Second Amended Complaint and the attached documents, Defendant Hawthorne is

18   conclusively established as the second level reviewer. (See Doc. 83-2 at 11, 22.)  It is clear that

19   Defendant Hawthorne did not personally meet with Plaintiff. (Id.) Defendant Hawthorne's denial

20   of the second level review clearly expresses Defendant Hawthorne's supervisory role. (Id.)

21   Specifically, Defendant Hawthorne notes that he has "reviewed ... [Plaintiff's] health record" and

22   that Plaintiff's "primary care provider has evaluated ... [Plaintiff's] condition." Defendant Haw-

23   thorne's letters consistently reference the Primary Care provider's active role. (Doc. 83-2 at

24   11,22.) Plaintiff's allegations do not state Defendant Hawthorne's active role in the alleged

25   constitutional violations nor do they set forth a chain of events related to Defendant Hawthorne's

26   actions. At best Plaintiff credits Defendant Hawthorne as "aware of Plaintiff's serious medical

27   need." (Doc. 83 at 7.) Plaintiff accuses Defendant Hawthorne to have "intentionally denied and

28   delayed plaintiff access to medical care once prescribed." (Doc. 83 at 7.) However, Plaintiff does

1  not state how other than by denying him housing on the lower tier. (Doc. 83 at 7.) It is clear, based

2  on a cumulative review of the allegations in the complaint, and the documents attached thereto,

3  Defendant Hawthorne did not personally participate or cause any constitutional violations against

4  Plaintiff. Because Plaintiff cannot base his claims on respondeat superior liability or vicarious

5  liability, the claims against Defendant Hawthorne ought to be dismissed.

6           Plaintiff also fails to satisfy the Eighth Amendment deliberate indifference standard

7  against Defendant Hawthorne. In fact, Plaintiff's Second Amended Complaint states that Defen-

8  dant Hawthorne did accommodate Plaintiff's needs by giving him a lower bunk. (Doc. 83 at 7.)

9  Plaintiff contradicts this statement one sentence later, however. Regardless, the documents

10  attached to the Second Amended Complaint make clear that Defendant Hawthorne reviewed and

11  agreed with Defendant Dugan's recommendations for medication, a lower bunk, and physical

12  therapy. (Doc. 83-2 at 11,22.) The review letters also express Defendant Hawthorne's "sympath[y]

13  to the issue of ... back pain." (Doc. 83-2 at 11.) Further, the letters explain in detail why Plaintiff's

14  request for lower tier housing or no stairs housing cannot be accommodated pursuant to well

15  established prison procedures and regulations. (Doc. 83-2 at 11, 22.)  Plaintiff fails to allege any

16  actions by Defendant Hawthorne that demonstrate both Plaintiff's deprivation of minimal civilized

17  measure of life's necessities and Defendant Hawthorne's deliberate indifference in doing so. See

18  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). At the very least, Defendant Hawthorne's

19  courteous and detailed reviews establish that he was not indifferent, but simply that Plaintiff's

20  request for lower tier housing was not justified based on his health records and condition.

21  Accordingly, the Court RECOMMENDS that this claim be DISMISSED.

22                    c.       Claims against Defendant Barreras

23           Plaintiff alleges that "Dr. Barreras did not commit the cruel and unusual punishment ...

24  she became responsible for them(sic) when she failed to correct them in the course of her

25  supervisory responsibilities." (Doc. 83 at 10). Dr. Barreras' liability arises from her review of

26  Plaintiff's grievances and failure to correct Dr. Khatri's decision that Plaintiff be placed in a general

27  housing assignment. Plaintiff also notes that Dr. Barreras received a letter from Plaintiff regarding

28

1   the denial of a raised toilet seat and extra mattress and "Dr. Barreras still denied the treatment."

2   (Doc. 83 at 10.)

3          Defendants maintain that all claims against Defendant Barreras should be dismissed

4   because Defendant Barreras acted only in a supervisory role and cannot be liable under section

5   1983 and additionally because Plaintiff fails to satisfy the deliberate indifference standard of the

6   Eighth Amendment. (Deft's P & A at 21-22.) Defendants further assert that Plaintiff's allegations

7   with respect to Defendant Barreras are in response to her policies and Plaintiff does not "allege

8   any facts stating how Defendant Barreras failed to provide adequate medical care or failed to

9   adequately respond to Plaintiff's requests for accommodations." (See Defs. P. & A. at 22.)

10         Plaintiff fails to allege Defendant Barreras' involvement in constitutional deprivations

11  as more than a supervisor. A supervisory official may be liable only if he or she was personally

12  involved in the constitutional deprivation, or if there was a sufficient causal connection between

13  the supervisor's wrongful conduct and the constitutional violation.  See Redman v. County of San

14  Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). Plaintiff clearly states that "Dr. Barreras personally

15  reviewed Plaintiff's appeal... in this case she personally reviewed and signed Exhibits Gray and

16  Brown (Plaintiff's appeals)." (Doc. 83 at 10.) Plaintiff further clarifies that "Dr. Barreras did not

17  commit the cruel and unusual punishment... she became responsible for them when she failed to

18  correct them in the course of her supervisory responsibilities." (Doc. 83 at 10.) Plaintiff alleges

19  neither factual grounds on which Defendant Barreras was personally involved nor stating a

20  sufficient causal connection to a constitutional violation. At best, Plaintiff provides conclusory

21  statements such as, Defendant Barreras' "failure to follow a surgeons prescribed treatment

22  caused Plaintiff significant and unnecessary wanton infliction of pain." (Doc. 83 at 9.)  The Second

23  Amended Complaint does not provide any factual insight into what Defendant Barreras did, other

24  than supervisory actions, such as deny Plaintiff's appeals, to participate in a constitutional

25  violation. Because Plaintiff cannot base his claims on respondeat superior liability or vicarious

26  liability, the claims against Defendant Barreras ought to be dismissed.

27         Plaintiff also fails to satisfy the Eighth Amendment deliberate indifference standard

28  against Defendant Barreras because he merely attributes Defendant Barreras with delaying his

1   treatment. (Doc. 83 at 9.) A mere delay in treatment does not constitute a violation of the Eighth

2   Amendment, unless the delay or denial was harmful.  See McGuckin, 974 F.2d at 1060; Shapley,

3   766 F.2d at 407; Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) ("[D]elay in providing a

4   prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment

5   violation."); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Certainly, not every twinge

6   of pain suffered as the result of delay in medical care is actionable.").  And while the harm caused

7   by delay need not necessarily be "substantial," McGuckin, 974 F.2d at 1060 & n.2, the Eighth

8   Amendment is violated only if the delay "occurred to patients with problems so severe" that the

9   failure to act quickly would cause an obvious or excessive risk to the prisoner's health or safety.

10   Hallett, 287 F.3d at 1206; Farmer, 511 U.S. at 834.  Plaintiff's factual allegations are insufficient to

11   state an Eighth Amendment deliberate indifference claim against Defendant Barreras.  Plaintiff

12   details that Defendant Barreas recommended Plaintiff be admitted to the Correctional Treatment

13   Center but "delayed the recommendation." (Doc. 83 at 9.) Plaintiff's other allegations against

14   Defendant Barreras are conclusory and without a factual support. See Council v. Watt, F.2d 618,

15   624 (9th. Cir. 1981) (Plaintiff's conclusory allegations or formulaic recitation of elements need not

16   be credited by the Court). Plaintiff not only fails to allege Defendant Barreras' personal role, but

17   also fails to provide facts that amount to deliberate indifference. Thus, the Court recommends

18   that the claims against Defendant Barreras be DISMISSED.

19                                    d.        Claims against Defendant Fraze

20                    Defendants argue that Plaintiff has failed to state an Eighth Amendment claim as to

21   Defendant Fraze as the documents attached to Plaintiff's Second Amended Complaint demon-

22   strate that Defendant Fraze was responsive to Plaintiff's concerns about accommodating his

23   medical condition and Defendant Fraze provided Plaintiff with pain medication.  (See Defs.' Mot.

24   at 17-18.)

25                    Plaintiff claims in his Second Amended Complaint that Defendant Fraze told him that

26   there was "nothing wrong with him" and his medical complaints are "all mental." (Doc. 83 at 12.)

27   The crux of Plaintiff's claims against Defendant Fraze are based on Fraze's alleged refusal to

28   provide Plaintiff with a raised toilet seat as prescribed by Doctor Calvin.  (Id.) As noted above, this

1    issue is unexhausted and should be dismissed from the Second Amended Complaint. It is clear

2    from the face of the Second Amended Complaint that none of the factual allegations against

3    Defendant Fraze arose prior to Plaintiff's filing of this suit. Plaintiff states that all of Defendant

4    Fraze's violations are for "post-operative care" from Plaintiff's back surgery which occurred in late

5    June 2008. (Doc. 83 at 12.) Plaintiff also cites a July 24, 2009 examination at which Dr. Calvin

6    ordered the toilet seat, from which Defendant Fraze's violations accrue. (Doc. 83 at 12.) However

7    even taking Plaintiff's allegations as true, that Defendant Fraze did not believe that Plaintiff had a

8    serious medical condition, Fraze still accommodated his concerns by recommending that Plaintiff

9    be housed in the infirmary and continued to provide Plaintiff with pain medication.  (Doc. 83-2 at

10   40, 58, 60-62 .) These allegations do not rise to the level of an Eighth Amendment deliberate

11   indifference claim.  Thus, the Court RECOMMENDS the Claims against Defendant Fraze be

12   DISMISSED.                              e.      Claims against Defendant Khatri

13           Plaintiff alleges in his Second Amended Complaint that Defendant Khatri removed him

14   from the disability placement program ("DPP") based on Defendant Khatri's representations that

15   he had consulted with Dr. Calvin whom Khatri claimed stated that Plaintiff no longer had a

16   mobility problem.  (See SAC at 16.)  Plaintiff further claims that Defendant Khatri was deliberately

17   indifferent to Plaintiff's medical needs by failing to provide a raised toilet seat. (Id.) Defendant

18   Khatri ordered that Plaintiff be housed in general population without accommodation for his

19   medical condition.  (Id.)  As a result of his housing, Plaintiff was unable to sit on his bed properly

20   which forced him to "sit with his back arched which caused him severe pain."  (Id.)

21           Defendants assert that the documents attached to the Second Amended Complaint

22   establish that Defendant Khatri examined Plaintiff August 4, 2008 and noted that there was no

23   medical indication that Plaintiff should be provided his ADA accommodation. (Doc. 83-2 at 40.)

24   The documents do establish as such, and that Defendant Kahtri noted Plaintiff "was walking with

25   no difficulty and not using a cane or crutches." (Doc. 83-2 at 40, 43-44,46-47, 50.) On August 13,

26   2008, Defendant Khatri removed Plaintiff from the DPP because he determined that Plaintiff  was

27   "recovered" and suffered "no mobility problem." (Doc. 83-2 at 53.)  On August 26, 2008, Defen-

28   dant Khatri reexamined Plaintiff and recommended a 90 day no work restriction, prison tennis

23

08cv1324

1  shoes, an extra mattress, extra mattress, and bottom bunk lower tier housing assignment. (Doc.

2  83-2 at 58.) As part of a second level appeal review regarding the lower bunk assignment, Plaintiff

3  was transferred to CTC to accommodate his medical issues." (Doc. 83-2 at 74-75, 80.) The second

4  level appeal also notes that Plaintiff's was seen by his surgeon, Dr. Calvin, on July 24, 2008, and

5  that the post operative prognosis indicated that he was "doing well" and that "the progress is very

6  good." (Doc. 83 at 43, 50.)

7         Defendants argue that the documents attached to the Second Amended Complaint

8  establish that Defendant Khatri was not deliberately indifferent to Plaintiff's condition.  (See Defs.'

9  Mot. at 20.)  However, the allegations of disagreement in medical opinion appear to be between

10  the doctor that was making a variety of medical decisions related to Plaintiff's condition, Dr.

11  Calvin, and Defendant Khatri.  While documents attached to the Second Amended Complaint

12  establish that Plaintiff was removed from the DPP, (doc. 83-2 at 53) the other documents reveal

13  that Defendant Khatri's decision was based on Plaintiff's positive progress and improved health

14  condition. The records indicate that Defendant Khatri met with Plaintiff and evaluated his

15  condition several times and within two weeks of removal from DPP, Defendant Khatri provided

16  Plaintiff with accommodations, allowing for a 90 day no work restrictions, tennis shoes, extra

17  mattress, and pain medication. The Court does not find that Defendant Khatri's actions rise to the

18  level of deliberate indifference under the Eighth Amendment.  Thus, the Court recommends that

19  the claims against Defendant Khatri be dismissed.

20              f.      Claims against Defendant Almager

21         Plaintiff's claims against Defendant Almager arise from his continuation of a policy

22  initially issued by his predecessor that refused to allow any prisoner to have an extra mattress

23  regardless of whether a doctor ordered an extra mattress for medical reasons.  (See Doc. 83 at

24  14.)  As the Court stated above, deliberate indifference is a high legal standard." Toguchi, 391 F.3d

25  at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which

26  the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must

27  also draw the inference.'"  Id. at 1057 (quoting Farmer, 511 U.S. at 837).

28

1    Here, there are no facts alleged that Defendant Almager was, in any way, knowledge-

2    able about Plaintiff's serious medical needs.  Plaintiff asserts that he mailed notifications to

3    Defendant Almager. (Doc. 83 at 14.) However, there is no indication that Defendant Almager

4    receives or reads letters from prisoners. Rather, as Warden, Almager would likely not read letters

5    from prisoners, but rather would rely on internal prison procedures and personnel to notify him of

6    a prisoner who needed attention. Plaintiff alleges no personal interaction with Defendant

7    Almager. There are no facts from which an inference could be drawn that Defendant Almager

8    should have known that there was a "substantial risk of serious harm" to Plaintiff if he was denied

9    an extra mattress.  Supervisory personnel are generally not liable under Section 1983 for the

10   actions of their employees under a theory of respondeat superior.  Palmer v. Sanderson, 9 F.3d

11   1433, 1437-38 (9th Cir. 1993).  Therefore, when a named defendant holds a supervisory position, a

12   causal link between him and the claimed constitutional violation must be specifically alleged.  See

13   Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

14   1978).  To state a claim for relief under Section 1983 based on a theory of supervisory liability,

15   Plaintiff must allege some facts that would support a claim that the supervisor either:  personally

16   participated in the alleged deprivation of constitutional rights, knew of the violations and failed to

17   act to prevent them, or promulgated or "implemented a policy so deficient that the policy 'itself is

18   a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

19   Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); see also Taylor v.

20   List, 880 F.2d 1040, 1045 (9th Cir. 1989).

21   Here, Plaintiff has not alleged any facts which show Defendant Almager personally

22   participated in the alleged deprivation of his Eighth Amendment right to adequate medical care,

23   that he actually knew of any constitutional violations and failed to act to prevent them, or that he

24   promulgated or implemented a policy so deficient that it repudiated Plaintiff's constitutional right

25   to adequate medical care or was "the moving force" behind any Eighth Amendment violation.

26   Hansen, 885 F.2d at 646. Furthermore, the policy of which Plaintiff complains clearly was not

27   enforced as Plaintiff was assigned an extra mattress following his back surgery. (See Doc. 83-2 44,

28   49, 51, 58.)  Thus, without more, Plaintiff's Second Amended Complaint fails to allege facts

08cv1324

1   sufficient to show that Almager was actually aware of his serious medical needs or that he

2   deliberately failed to act to prevent an excessive or serious risk to Plaintiff's health.  Hansen, 885

3   F.2d at 645; Farmer, 511 U.S. at 837.  The Court RECOMMENDS that all claims against Defendant

4   Almager be DISMISSED.

5          E.    State Law Claims

6          The Court has recommended dismissal of all constitutional claims over which it

7   possesses original jurisdiction. Under the supplemental jurisdiction statute, the Court may decline

8   to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over

9   which it has original jurisdiction." 28 U.S.C. 1367(c)(3). Accordingly, the Court RECOMMENDS

10   DISMISSAL of all Plaintiff's state law claims.

11   **VI.**    **CONCLUSION**

12          The Court, having reviewed the Second Amended Complaint, the exhibits attached

13   thereto, and all motions and relevant attachments and oppositions, with GOOD CAUSE APPEAR-

14   ING, HEREBY RECOMMENDS that Plaintiff's Motion to File a Supplemental Complaint (Doc. No. 89)

15   be DENIED as futile; Defendants' Motion to Dismiss the Second Amended Complaint for failure to

16   exhaust (Doc. No. 87) be GRANTED; and Defendants' Motion to Dismiss the Second Amended

17   Complaint for failure to state a claim under the Eighth Amendment (Doc. No. 88) be GRANTED.

18          This Report and Recommendation of the undersigned Magistrate Judge is submitted to

19   the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. §

20   636(b)(1).

21          IT IS ORDERED that no later than August 20, 2010, any party to this action may file

22   written objections with the Court and serve a copy on all parties.  The document should be

23   captioned "Objections to Report and Recommendation."

24   ///

25   ///

26   ///

27   ///

28

08cv1324

1          IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court

2    and served on all parties no later than <u>September 10, 2010</u>. The parties are advised that failure to

3    file objections within the specified time may waive the right to raise those objections on appeal of

4    the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

10   DATED:  July 23, 2010

                                                       Hon. William V. Gallo
                                                       U.S. Magistrate Judge

08cv1324