1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10
11   ESTER BURNETT,                  )   Civil No. 08-CV-1324-L(WVG)
                                     )
12                 Plaintiff,        )   SUPPLEMENTAL REPORT AND
                                     )   RECOMMENDATION ON MOTION FOR
13   v.                              )   LEAVE TO FILE SUPPLEMENTAL
                                     )   COMPLAINT
14   DR. DUGAN, *et al.*,            )
                                     )   [DOC. NO. 89]
15                 Defendants.       )
     _____ )
16

17        Pending before the Court is Plaintiff's motion for leave to
18   file a supplemental complaint.  (Doc. No. 89.)  Plaintiff seeks to
19   join fourteen new defendants for alleged Eighth Amendment violations
20   that transpired after filing of the original Complaint but before
21   filing of the Second Amended Complaint ("SAC").  The undersigned
22   recommends that Plaintiff's motion be DENIED.

23                          **I.   BACKGROUND**
24   **A.      Brief Factual Background**
25        Plaintiff has lumbar disk disease that ultimately required
26   surgery.  His back problems include mobility impairment to his lower
27   extremities.  Plaintiff's proposed complaint alleges that the
28   putative defendants were deliberately indifferent to his medical

08CV1324

1   needs because they did not provide him a single-bed cell while he

2   recovered from back surgery.

3        Dr. Calvin was an outside consultant who was not employed by

4   the California Department of Corrections and Rehabilitation

5   ("CDCR"). (Doc. No. 89-3 at 10 (claim appeals letter to Plain-

6   tiff).) Dr. Calvin's role was to <u>recommend</u> a course of treatment,

7   which was reviewed by CDCR doctors, who then <u>ordered</u> the proper

8   course of treatment. (<u>Id.</u>) All but two of Plaintiff's proposed new

9   claims stem from Dr. Calvin's recommendation that Plaintiff be

10   permanently assigned to a cell with a single bed and without any

11   overhead obstructions, such as a bunk bed. Plaintiff challenges the

12   CDCR doctors' decision to order a different course of treatment than

13   Dr. Calvin recommended and consistently characterizes Dr. Calvin's

14   recommendations as "orders" or "prescriptions."

15   **B.**   <u>**Procedural Background**</u>

16        Plaintiff filed his original Complaint on July 22, 2008.

17   (Doc. No. 1.) Shortly thereafter, the Court screened the Complaint

18   and *sua sponte* dismissed it with leave to amend. (Doc. No. 3.)

19   Plaintiff filed his First Amended Complaint on November 24, 2008.

20   (Doc. No. 11.) On October 5, 2009, however, the Court granted in

21   part Defendants' motion to dismiss the FAC and granted Plaintiff

22   leave to amend. (Doc. No. 68.) Plaintiff then filed his Second

23   Amended Complaint ("SAC") on November 10, 2009. (Doc. No. 83.)

24        Defendants filed a motion to dismiss the SAC for failure to

25   exhaust administrative remedies and a second motion to dismiss for

26   failure to state a claim under the Eighth Amendment. (Doc. Nos. 87,

27   88.) Rather than respond to Defendants' motions to dismiss,

28   Plaintiff filed a motion to file a supplemental complaint. (Doc.

08CV1324

1  No. 89.)  Defendants opposed plaintiff's motion, and Plaintiff has

2  replied.  (Doc. Nos. 94, 95.)

3       On July 23, 2010, the undersigned issued a Report and

4  Recommendation ("R&R") that recommended, *inter alia*, that Plain-

5  tiff's motion to file his supplemental complaint be denied.  (Doc.

6  No. 102.)  Senior District Judge Lorenz adopted the R&R as it

7  related to Defendants' motion to dismiss, dismissed the SAC, and

8  referred Plaintiff's motion to file a supplemental complaint back to

9  the undersigned to be considered in light of an intervening change

10  in the law.  The undersigned now considers Plaintiff's motion anew

11  in light of Defendants' original opposition and Rhodes v. Robinson,

12  621 F.3d 1002 (9th Cir. 2010).

13                    II.  LEGAL PRINCIPLES

14  A.       Supplementation of a Pleading

15       Because Plaintiff's motion seeks to supplement a pleading, it

16  necessarily invokes Federal Rule of Civil Procedure 15(d), which

17  provides that a party may "serve a supplemental pleading setting

18  forth transactions or occurrences or events which have happened

19  since the date of the pleading sought to be supplemented."  Fed. R.

20  Civ. P. 15(d).  "Rule 15(d) provides a mechanism for parties to file

21  additional causes of action based on facts that didn't exist when

22  the original complaint was filed."  Eid v. Alaska Airlines, Inc.,

23  621 F.3d 858, 874 (9th Cir. 2010) (emphasis added).

24  B.       The Eighth Amendment

25       Deliberate indifference to serious medical needs violates the

26  Eighth Amendment's proscription against cruel and unusual punish-

27  ment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v.

28  Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other*

1   *grounds*, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir.

2   1997) (en banc).   A determination of "deliberate indifference"

3   involves an examination of two elements:   the seriousness of the

4   prisoner's medical need and the nature of the defendant's response

5   to that need.   <u>See</u> McGuckin, 974 F.2d at 1059.

6        A "serious" medical need exists if the failure to treat a

7   prisoner's condition could result in further significant injury or

8   the "wanton infliction of unnecessary pain." <u>Id.</u>   Examples of

9   serious medical needs include "the existence of an injury that a

10  reasonable doctor or patient would find important and worthy of

11  comment or treatment; the presence of a medical condition that

12  significantly affects an individual's daily activities; or the

13  existence of chronic and substantial pain." <u>Id.</u> at 1059-60.

14       A prison official is deliberately indifferent if he knows

15  that a prisoner faces a "substantial risk of serious harm and

16  disregards that risk by failing to take reasonable measures to abate

17  it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).   For example,

18  deliberate indifference may include a prison doctor's inadequate

19  response to a prisoner's medical needs, "prison guards intentionally

20  denying or delaying access to medical care, or intentionally

21  interfering with the treatment once prescribed." <u>Estelle</u>, 429 U.S.

22  at 104-105.

23       "The requirement of deliberate indifference is less stringent

24  in cases involving a prisoner's medical need than in other cases

25  involving harm to incarcerated individuals because '[t]he State's

26  responsibility to provide inmates with medical care ordinarily does

27  not conflict with competing administrative concerns.'" <u>McGuckin</u>,

28  974 F.2d at 1060.   Nonetheless, the indifference to medical needs

1   must be substantial; inadequate treatment due to malpractice, or

2   even negligence, does not amount to a constitutional violation.

3   Estelle, 429 U.S. at 106; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th

4   Cir. 2004). Disagreements over "matters for medical judgment," such

5   as whether additional tests or treatment are required, are insuffi-

6   cient to establish a constitutional violation. Estelle, 429 U.S. at

7   107.

8   **C.    The Eighth Amendment and Supervisory Liability**

9         In this case, Plaintiff seeks to hold some Defendants liable

10  on a theory of supervisory liability. "Supervisors can be held

11  liable for: 1) their own culpable action or inaction in the

12  training, supervision, or control of subordinates; 2) their

13  acquiescence in the constitutional deprivation of which a complaint

14  is made; or 3) for conduct that showed a reckless or callous

15  indifference to the rights of others." Cunningham v. Gates, 229

16  F.3d 1271, 1292 (9th Cir. 2000). For liability to exist, the

17  supervisor must have been "personally involved in the constitutional

18  deprivation or a sufficient causal connection must exist between the

19  supervisor's unlawful conduct and the constitutional violation."

20  Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001).

21  There is no "vicarious liability" under Section 1983. See Ashcroft

22  v. Iqbal, 129 S. Ct. 1937, 1948 (2009).

23                   **III.   DISCUSSION**

24  **A.    Plaintiff Exhausted His Administrative Remedies**

25        Defendants argue that Plaintiff's proposed supplemental

26  complaint is barred because he failed to exhaust his administrative

27  remedies before he first filed suit in July 2008. The undersigned

28  concludes that Plaintiff exhausted his administrative remedies.

08CV1324

1    The Prison Litigation Reform Act amended 42 U.S.C. § 1997e(a)

2    provides that "[n]o action shall be brought with respect to prison

3    conditions under section 1983 . . . by a prisoner confined in any

4    jail, prison or other correctional facility until such administra-

5    tive remedies as are available are exhausted."   42 U.S.C. §

6    1997e(a).   Courts have construed this requirement strictly to

7    "afford[] . . . corrections officials time and opportunity to

8    address complaints internally before allowing the initiation of a

9    federal case." Porter v. Nussle, 534 U.S. 516, 525-26 (2002).

10    In the original R&R, the undersigned concluded that Plaintiff

11    was required to administratively exhaust his proposed new claims

12    before he originally filed suit in 2008.   Thus, because all of the

13    claims and allegations against the fourteen new defendants arose

14    after Plaintiff first filed suit, he could not possibly have

15    exhausted his claims before 2008, and he was barred from bringing

16    those claims in this suit. However, on September 8, 2010, the Ninth

17    Circuit Court of Appeals issued its opinion in Rhodes v. Robinson,

18    621 F.3d 1002 (9th Cir. 2010).

19    Rhodes decided the issue whether an inmate must administra-

20    tively exhaust new claims before he first files suit or whether

21    those new claims are barred from joinder because they arose after

22    the filing of the original complaint.   Rhodes, 621 F.3d at 1004.

23    Rhodes specifically addressed the situation where "a prisoner is

24    filing an amended complaint based on new conduct" that arose after

25    the original complaint.   Id.   Reasoning that "when a plaintiff files

26    an amended complaint, '[t]he amended complaint supercedes the

27    original, the latter being treated thereafter as non-existent,'" id.

28

08CV1324

1    at 1005 (citation omitted), the Court held that new claims that
2    arise after the filing of the original complaint can be brought by
3    amended complaint so long as the new claims were exhausted before
4    filing of the amended complaint, <u>id.</u> at 1007.

5         Here, Plaintiff exhausted his administrative remedies in
6    October 13, 2009, one month before filing the SAC. (Doc. No. 89-10
7    at 2-6 (October 13, 2009, letter denying appeals).) Defendants'
8    opposition does not dispute that the claims in the proposed
9    complaint were exhausted in October 2009.[1]  Following <u>Rhodes</u>, the
10   undersigned concludes that Plaintiff exhausted the new claims in his
11   proposed complaint before he sought leave to file it.   Having
12   determined that Plaintiff's claims were properly exhausted, the
13   Court turns to whether he should be allowed to file the supplemental
14   complaint.

15   **B.    <u>Rule 15(d) Does Not Apply; Plaintiff's Motion Should Instead
         Be Construed as a Motion To Amend Under Rule 15(a)</u>**
16

17        As <u>Rhodes</u> teaches, because "when a plaintiff files an amended
18   complaint, '[t]he amended complaint supercedes the original, the
19   latter being treated thereafter as non-existent,'" <u>Rhodes</u> 621 F.3d
20   at 1005 (citation omitted), the operative complaint that Plaintiff's
21   motion necessarily seeks to supplement is his Second Amended
22   Complaint--not either of the two preceding complaints.  The Second
23   Amended Complaint became the sole operative complaint in this case
24   when it was filed because the first two complaints ceased to exist.
25   The undersigned therefore turns to whether Plaintiff may supplement
26   the Second Amended Complaint.

27

28   _____

[1]     Rather, Defendants argue that the October 2009 exhaustion was
        immaterial because it did not occur before the filing of the
        original complaint.

1    Because the facts and parties Plaintiff seeks to supplement
2    are all related to events that transpired <u>before</u> Plaintiff filed his
3    Second Amended Complaint, he cannot <u>supplement</u> the SAC.   <u>Eid v.</u>
4    <u>Alaska Airlines, Inc.</u>, 621 F.3d 858, 874 (9th Cir. 2010) ("Plain-
5    tiffs, however, seek to add defamation claims arising from conduct
6    which happened nearly a year <u>before</u> they filed their first com-
7    plaint.  These claims could not, therefore, be brought as supplemen-
8    tal pleadings under Rule 15(d).") (emphasis in original).   Rule
9    15(d) does not apply.
10    However, although Plaintiff's motion is styled as a motion
11    for leave to file a <u>supplemental</u> complaint, the undersigned
12    recommends that the motion be construed as a motion for leave to
13    file an <u>amended</u> complaint under Rule 15(a).[2/]   <u>See</u> <u>Erickson v.</u>
14    <u>Pardus</u>, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be
15    liberally construed' . . . .") (per curiam) (quoting <u>Estelle v.</u>
16    <u>Gamble</u>, 429 U.S. 97, 106 (1976)) (internal citations omitted);
17    <u>Corjasso v. Ayers</u>, 278 F.3d 874, 878 (9th Cir. 2002) ("Pro se habeas
18    petitioners may not be held to the same technical standards as
19    litigants represented by counsel."); <u>Rand v. Rowland</u>, 154 F.3d 952,
20    957 (9th Cir. 1998) (en banc) (explaining that courts "tolerate
21    informalities from civil pro se litigants.").
22
23
24
25
26
27
28

[2/]   Regardless of how the motion is styled, the standard which governs
amendments to pleadings under Rule 15(a) is the same as governs
supplemental pleadings.   <u>See</u> <u>Glatt v. Chicago Park Dist.</u>, 87 F.3d
190, 194 (7th Cir. 1996) (Posner, J.).   Thus, even if Plaintiff's
motion is not construed as a motion to amend, the Rule 15(a)
analysis below nonetheless applies if the motion is considered as a
motion to supplement pleadings.   The outcome would be the same.

## C.     Rule 15(a) Is Unavailing Because Plaintiff's Proposed Amendments Are Futile

Construing Plaintiff's motion as a motion to amend, the undersigned nonetheless recommends denying it based on the futility of the amendments sought.

Rule 15(a) allows a Plaintiff to amend his complaint once as a matter of course and then only after leave of court or the opposing party's consent. Fed. R. Civ. P. 15(a)(1)-(2). "The court should freely give leave when justice so requires." Id. § 15(a)(2). "The power to grant leave to amend, however, is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors:  bad faith, undue delay, prejudice to the opposing party, and/or futility.'" Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citations omitted). "[I]n the normal course district courts should freely grant leave to amend when a viable case may be presented." Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002).

However, "[f]utility alone can justify the denial of a motion to amend." Id.; see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (futile amendments should not be permitted).  "'[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" Sweaney v. Ada County, 119 F.3d 1385, 1393 (9th Cir. 1997) (quoting Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).)  "When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment."

08CV1324

1    <u>Chaset v. Fleer/Skybox Int'l, LP</u>, 300 F.3d 1083, 1088 (9th Cir.
2    2002).

3               **1.   <u>Count 1 Against Dr. Davenport and Dr. Levin</u>**

4               Plaintiff alleges a new claim[3/] against Dr. Davenport and Dr.
5    Levin for an alleged conspiracy to cause him pain and suffering by
6    "intentionally" denying him treatments recommended by another
7    doctor, Dr. Calvin. (Doc. No. 89-3 at 6.) Specifically, Plaintiff
8    alleges that Dr. Davenport and Dr. Levin knew that Dr. Calvin
9    recommended, based on his "professional judgment," that Plaintiff
10   should receive a single-bed cell. (<u>Id.</u> at 7.) Dr. Davenport and
11   Dr. Levin allegedly went against Dr. Calvin's professional judgment
12   and ordered Plaintiff placed in a cell that contained a bunk bed.
13   On March 17, 2009, Dr. Davenport opined that Plaintiff had "no
14   mobility impairment" and ordered "no housing restriction." (Doc.
15   No. 89-8 (Part 5) at 1-2 (doctor's order).)

16              Plaintiff's allegations are at their core a general challenge
17   to differing medical opinions. Plaintiff does not allege that a
18   non-medical prison official, such as a correctional officer,
19   disregarded a doctor's order. Rather, he alleges that two doctors'
20   (Davenport and Levin) medical judgments differed from another
21   doctor's (Calvin) judgment.

22              The most significant flaw with Plaintiff's allegations is his
23   treatment of Dr. Calvin's medical opinion as the absolute last word
24   on the subject, cast in stone, and unable to be ever be changed by
25   anyone in the future. If any other doctors disagreed with Dr.
26   Calvin's <u>recommendation</u>, he reasons, those doctors <u>must</u> be falsify-

27   _____

28   [3/]    Unless otherwise noted, the undersigned's reference to "claim" or
            "count" is to a 42 U.S.C. Section 1983 claim based on alleged
            violations of the Eighth Amendment.

08CV1324

1    ing reports and maliciously conspiring against him to cause him pain

2    and suffering based on some inexplicable motive.  However, Dr.

3    Calvin's opinion is just <u>one</u> of the two competing medical opinions

4    in this case.  The other doctors Plaintiff seeks to sue opine that

5    Plaintiff did not need the special accommodations.  Just because the

6    latter doctors' opinions differ from Dr. Calvin's does not mean

7    there was a conspiracy or constitutional violation.  Dr. Calvin's

8    differing medical <u>opinion</u> is just that and nothing more.

9         Because challenges to differing medical opinions cannot be

10   the basis for an Eighth Amendment violation, Plaintiff's proposed

11   first claim fails, and Plaintiff's proposed amendment is futile as

12   a result.

13        **2.   <u>Count 2 Against Dr. Levin</u>**

14        Plaintiff again alleges that Dr. Levin disregarded the

15   medical opinion that Plaintiff should be permanently housed in a

16   single-cell bed when Dr. Levin approved Dr. Davenport's recommenda-

17   tion that Plaintiff not be housed in a single-bed cell.  (<u>Id.</u> at 10;

18   <u>see also</u> Doc. No. 89-8 (Part 5) at 1-2 (removal order).)  He also

19   alleges that Dr. Levin initiated an "adverse transfer" to Calipatria

20   prison with the intent to transfer him back to Centinela and have

21   him housed in general population.  (Doc. No. 89-3 at 11.)  As with

22   Count 1, Count 2 is another challenge to differing medical opinions

23   between doctors, not a lay person's failure to follow a doctor's

24   order.  Count 2 fails for the same reason Count 1 fails.

25        Count 2 also includes a passing allegation against Dr. Ball,

26   Calipatria Prison's Chief Medical Officer, who allegedly conspired

27   with Dr. Levin to deprive Plaintiff a single-bed cell.  (<u>Id.</u> at 10.)

28   Because Dr. Ball's actions were based on Dr. Levin's differing

1  medical judgment, and because Dr. Levin's judgment cannot be the
2  basis for an Eighth Amendment violation, it follows *a fortiori* that
3  Dr. Ball could not have conspired with Dr. Levin to violate
4  Plaintiff's rights.

5       Plaintiff also mentions that Dr. Levin's actions were in
6  violation of Judge Lorenz's Order that granted Plaintiff's request
7  for a preliminary injunction and ordered that he be housed in a
8  single-bed cell.   However, because Dr. Levin's alleged actions
9  occurred on and before March 17, 2009, he could not possibly have
10 been in violation of Judge Lorenz's subsequent May 6, 2009, Order.
11 Based on the foregoing, Plaintiff's proposed amendments are futile.

12       **3.   Count 3 Against Dr. Shiller**

13      Plaintiff alleges that on March 18, 2009, Dr. Shiller, a
14 Primary Care Physician at Centinela, denied him a single-bed cell
15 despite knowing that Dr. Calvin recommended a single-bed cell.
16 (Doc. No. 89-3 at 15.)  Plaintiff's proposed amendment to add Count
17 3 is futile for the same reasons as  Counts 1 and 2.  Further, Dr.
18 Shiller's April 15, 2009, alleged violation of Judge Lorenz's Order
19 is illogical since the Order did not issue until May 6, 2009. (See
20 Doc. No. 36 (Order granting request for preliminary injunction).)

21       **4.   Count 4 Against Dr. Hjerper *et al.***

22      Plaintiff's proposed fourth claim alleges that Dr. Hjerper
23 conspired with six other doctors, a prison grievance appeals
24 coordinator, an un-named nurse, and two prison wardens to devise a
25 devious, far-reaching "ruse or trick or stratagem to deceive
26 Plaintiff into believing that Dr. Calvin had changed his orders and
27 recommendations to say Plaintiff did not require single bed no
28 overhead housing." (Doc. No. 89-3 at 20.)

1      Count 4 fails to the extent it challenges differing medical

2  opinions.  The allegations against the two named wardens fail

3  because they are supervisors and their personal involvement is not

4  alleged.  The allegations against Nurse Jane Doe fail because she

5  acted in reliance on the doctors' medical opinions.  Finally, the

6  allegation that the above proposed defendants violated Judge

7  Lorenz's May 6, 2009, Order is illogical because the dates Plaintiff

8  cites in Count 4 all predate the Order.

9      As with Counts 1 through 3, Count 4 fails to state a claim

10  against any of the named putative defendants.  As a result,

11  Plaintiff's proposed amendment is futile.

12      **5.**   <u>**Count 5 Against Dr. Ball**</u>

13      The allegations against Dr. Ball in Count 5 are based on the

14  same differing medical opinions described above.  As a result, Count

15  also 5 fails, and Plaintiff's proposed amendment is futile.

16      **6.**   <u>**Count 6 Against Nurse Jane Doe**</u>

17      Plaintiff alleges that Nurse Jane Doe lied to him when she

18  stated that Dr. Calvin had changed his "orders," that Plaintiff be

19  housed in a single-bed cell, and conspired with the previously-named

20  doctors and wardens into tricking him into believing Dr. Calvin had

21  done so.  (<u>Id.</u> at 27.)  Again, no matter how much Plaintiff

22  disagrees with the medical opinion that he should not be housed in

23  a single-bed cell, Nurse Doe relied on that medical opinion.  Even

24  assuming she lied about Dr. Calvin's changed opinion, which was

25  simply a recommendation and not an order, the fact remains that the

26  orders of Dr. Davenport and Dr. Levin both support Nurse Doe's

27  alleged assertion.  As a result, Count 6 fails, and Plaintiff's

28  proposed amendment is futile.

1        **7.   Count 7 Against Dr. Vo**

2        Count 7 repeats the same allegations above against Dr. Vo.

3    For the same reasons as above, Count 7 fails, and Plaintiff's

4    proposed amendment is futile.

5        **8.   Counts 8 and 9 Against Wardens Uribe Jr. and Smalls**

6        Plaintiff alleges that Warden Uribe Jr. transferred Plaintiff

7    to Calipatria State Prison because Centinela did not have the

8    facilities to accommodate his medical needs. (Id. at 34.)  When

9    Plaintiff was transferred back to Centinela, he was placed in

10   general population. (Id.)  He further broadly claims that Warden

11   Smalls generally participated in the alleged conspiracy against him.

12   (Id. at 39.)

13       Plaintiff's claims against the wardens fail because he does

14   not allege that either warden personally ordered that he be

15   transferred between the prisons or placed in general population upon

16   his return to Centinela.  Not only are Plaintiff's broad assertions

17   unsupported by factual allegations, the exhibits to his proposed

18   complaint contradict his broad, general assertion that the wardens

19   transferred him in violation of his rights.   These exhibits

20   demonstrate that the decision to transfer him to Calipatria was

21   based on the medical opinions of the two prisons' chief medical

22   officers, Dr. Levin and Dr. Ball, not the prisons' wardens.   The

23   doctors' transfer agreement was memorialized by Dr. Levin:

24       The above named patient/inmate will be transferred to
         Calipatria State Prison Out-Patient Housing Unit on
25       02/20/09.  He has been accepted by Dr. Ball, CMO (A) at
         Calipatria State Prison.  This agreement was made between
26       Dr. Levin, CMO (A) Centinela State Prison and Dr. Ball, CMO
         (A) Calipatria State Prison.  He is accepted as a medical
27       and return under the CMO-to-CMO agreement.

28

08CV1324

(Doc. No. 89-7 at 702.) Moreover, the exhibits contradict Plaintiff's general assertion that Warden Uribe placed him in general population upon his return to Centinela. Warden Uribe responded to Plaintiff's letter after he complained about his placement in general population:

> A. Pope, Correctional Counselor II from Facility C was contacted and she informed me you were seen in Unit Classification Committee (U.C.C.) for Out to Medical and Return on March 13, 2009, and cleared for double celling. She also informed me there was documentation provided from Calipatria State Prison via the Assistant Classification and Parole Representative from Centinela State Prison, which cleared you medically for double cell housing by Dr. Calvin. In addition, your Central File (C-File) was reviewed and you did not meet single cell housing criteria per classification policy. She claims to have informed you if you were not satisfied with [the] Committee's action you had the right to appeal the action via the CDC 602 appeal system.

(Doc. No. 89-9 at 26.) Contradicting Plaintiff's general assertion that Warden Uribe placed him in Centinela's general population, this letter shows that a classification committee was responsible for Plaintiff's housing decisions, not the warden. In light of Plaintiff's bare assertions, and Plaintiff's own contradictory exhibits, Counts 8 and 9 fail, and Plaintiff's proposed amendments are futile.

**9. <u>Count 10 and 11 Against Dr. Fraze and Dr. John Doe</u>**

Counts 10 and 11 against Dr. Fraze and Dr. John Doe are based on the same general facts explained above. For the same reasons as above, Counts 10 and 11 fail, and Plaintiff's proposed amendments are futile.

**10. <u>Counts 12 and 13 Against Correctional Counselors Keys and Pope</u>**

Counts 12 and 13 allege that Correctional Counselors Keys and Pope stated that Plaintiff no longer needed a single-bed cell and

1    incorrectly classified him during a classification hearing. (<u>Id.</u> at

2    52-53.)  These claims fail because Keys and Pope were lay persons

3    who relied on the doctors' medical opinions.  Plaintiff's proposed

4    amendments are futile.

5          **11.**  **<u>Counts 14 and 15 Against Nurse Gerardo and Nurse</u>**
     **<u>Gonzalez</u>**

6

7          Counts 14 and 15 allege that Nurses Gerardo and Gonzalez

8    consistently failed to timely deliver Plaintiff's medication to him.

9    (<u>Id.</u> at 60.)  Specifically, Dr. Davenport had ordered that Plaintiff

10   was to take his medication with his meals, but the nurses consis-

11   tently gave him his medication after he had already eaten.  He also

12   alleges he was given the incorrect medication, which further delayed

13   his taking the medication.  As a result, he suffered a "severe upset

14   stomach."  (<u>Id.</u>)  The nurses allegedly delayed his medication

15   dispensation on three occasions:  December 8, 2008; December 10,

16   2008; and December 11, 2008.  (<u>Id.</u>)  Finally, the nurses allegedly

17   intentionally delivered Plaintiff's medication late because they

18   knew doing so would cause him pain.  (<u>Id.</u>)

19         During the complaint appeal process, Plaintiff was told that

20   the medication was dispensed in compliance with regulations, which

21   required dispensation within one hour of the prescribed time. (Doc.

22   No. 89-10 at 17.)  Further, Plaintiff was advised that his request

23   for disciplinary action against the involved nurses was "beyond the

24   scope of the appeals process."  (<u>Id.</u>)

25         **a.**  **<u>The Requirement of a Serious Medical Need</u>**

26         As briefly mentioned above, for an Eighth Amendment violation

27   to lie, the named nurses must disregard a serious medical need, such

28   as "the presence of a medical condition that significantly affects

1  an individual's daily activities; or the existence of chronic and

2  substantial pain." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th

3  Cir. 1992); <u>see also</u> <u>Doty v. County of Lassen</u>, 37 F.3d 540, 546 n.3

4  (9th Cir. 1994) ("In examining medical conditions separate from the

5  'routine discomfort' of incarceration, indicia of a 'serious'

6  medical need include . . . the existence of chronic or substantial

7  pain").

8      Because the medical need must be <u>serious</u>, a temporary,

9  insubstantial discomfort does not violate the Eighth Amendment. <u>See</u>

10 <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1372 (7th Cir. 1997) (explaining

11 that not "every ache and pain or medically recognized condition

12 involving some discomfort can support an Eighth Amendment claim.").

13 If the medical need involves "minor maladies or non-obvious

14 complaints of a serious need for medical care," <u>Blackmore v.</u>

15 <u>Kalamazoo County</u>, 390 F.3d 890, 899 (6th Cir. 2004), the inmate must

16 "place verifying medical evidence in the record to establish the

17 detrimental effect of the delay in medical treatment." <u>Napier v.</u>

18 <u>Madison County, Ky.</u>, 238 F.3d 739, 742 (6th Cir. 2001).

19          **b.   Plaintiff Has Not Sufficiently Alleged a Serious**
           **Medical Need**
20

21     Plaintiff's allegations are limited to just three specific

22 days, and there is no indication of either the severity or duration

23 of the "severe upset stomach" he suffered.  Without more, Plaintiff

24 has not alleged he suffered more than a fleeting, insubstantial

25 pain. <u>See</u> <u>Lusero v. Rowland</u>, 1992 U.S. App. LEXIS 15492, *3 (9th

26 Cir. June 26, 1992) ("Finally, the interruption in Lusero's

27 medication due to a shortage of antibiotics in the pharmacy, or

28 Lusero's upset stomachs as a result of taking the antibiotics, do

17                    08CV1324

1    not rise to a level of deliberate indifference."); <u>Bledsaw v.</u>

2    <u>Simpson</u>, 1994 U.S. App. LEXIS 9398 (8th Cir. May 3, 1994) (conclud-

3    ing that an inmate's pain was a "brief, minor discomfort" and not

4    significant enough to trigger an Eighth Amendment violation where

5    the inmate "had stomach cramps and could not eat anything for two or

6    three days."); <u>Benthall v. McKay</u>, 2008 U.S. Dist. LEXIS 115782, *5-6

7    (E.D. Va. Dec. 29, 2008) (concluding that inmate's suffering "upset

8    stomach and some nausea" was not a serious injury and was insuffi-

9    cient to make out an Eighth Amendment violation).

10        The proposed complaint simply lacks sufficient allegations

11   that Plaintiff's medical need was serious.  Counts 14 and 15, as

12   they currently stand, fail to state a viable Section 1983 claim.  As

13   a result, Plaintiff's proposed amendments are currently futile

14   because they will necessarily fail at a future motion to dismiss.

15        Further, Counts 14 and 15 should be dismissed because they

16   did not arise "out of the same transaction, occurrence, or series of

17   transactions or occurrences." <u>See</u> Fed. R. Civ. P. 20(a)(2)(A).  All

18   of the alleged acts or omissions in Counts 14 and 15 occurred well

19   after this lawsuit was originally filed, and none are related to the

20   differing medical opinions regarding the single-bed cell.  Counts 14

21   and 15 arose from events separate and distinct from any other event

22   or series of events alleged in this case.  As a result, Plaintiff

23   cannot now attempt to join Nurses Gerardo and Gonzalez in this

24   action.

25                        **III.   <u>CONCLUSION</u>**

26        Because Counts 1 through 13 rely on predicate facts that

27   cannot be the basis for violation of the Eighth Amendment, those

28

1  claims irreparably fail to state a cause of action against the
2  proposed Defendants.  Plaintiff's proposed amendments of Counts 1
3  through 13 are futile as a result.  The undersigned therefore
4  RECOMMENDS that Plaintiff's request to file a supplemental complaint
5  be DENIED WITH PREJUDICE as to Counts 1 through 13.  The undersigned
6  further RECOMMENDS that Plaintiff's motion be DENIED WITH PREJUDICE
7  as to Counts 14 and 15.

8      This report and recommendation of the undersigned Magistrate
9  Judge is submitted to the United States District Judge assigned to
10  this case, pursuant to the provision of 28 U.S.C. Section 636(b)(1).

11      IT IS ORDERED that no later than March 9, 2011, any party to
12  this action may file written objections with the Court and serve a
13  copy on all parties.  The document should be captioned "Objections
14  to Report and Recommendation."

15      IT IS FURTHER ORDERED that any reply to the objections shall
16  be filed with the Court and served on all parties no later than
17  March 16, 2011.  The parties are advised that failure to file
18  objections within the specified time may waive the right to raise
19  those objections on appeal of the Court's order.  Martinez v. Ylst,
20  951 F.2d 1153, 1156 (9th Cir. 1991).
21  DATED:  February 23, 2011
22
23                                    _____
24                                    Hon. William V. Gallo
                                      U.S. Magistrate Judge
25
26
27
28